VASSAU, Respondent, vs. THE MADISON ELECTRIC RAILWAY
COMPANY, Appellant.

*March 2 — March 20, 1900.*

*Street railways: Ejection of passenger: Punitory damages: Ratification
of wrongful acts: Instructions to jury: Injury to feelings.*

1. Plaintiff, accompanied by a young lady, tendered a genuine half
   dollar in payment of street-car fares, which was accepted and the
   proper change returned. Subsequently the conductor, from the
   peculiar appearance of the coin, came to the conclusion that it
   was counterfeit, and tendered it back to the plaintiff and told him
   to get off or pay again. Plaintiff testified that upon his refusal to
   do so the conductor took hold of him by the collar and pulled, and
   that he then got up and walked out peaceably, the young lady ac-
   companying him; and that the conductor spoke harshly and loudly,
   attracting the attention of the other passengers. Plaintiff had other
   money in his pocket. In an action to recover for such ejection,
   the evidence (more fully stated in the opinion) is *held* insufficient
   to warrant a finding by the jury that the plaintiff was ejected
   "under circumstances of aggravation, insult, or cruelty," or "with
   vindictiveness or malice." An instruction authorizing them to
   award punitory damages was therefore error.
2. Evidence in such case— to the effect that when plaintiff reported
   the matter to defendant's superintendent the latter told him that
   the conductor was one of the oldest on the line, and the company
   would stand by what he did; that he had the power to protect the
   company's property — a right to put plaintiff off; and that the
   matter should be looked up to ascertain whether the coin was
   counterfeit — is *held* insufficient to show that the superintendent
   authorized or ratified any aggravating, insulting, cruel, vindictive,
   or malicious conduct on the part of the conductor.

3. It was error, in such case, to refuse to instruct the jury that "in considering the question whether there was any injury to the feelings of plaintiff, you have the right to consider his conduct and that of the conductor, and, among other things, whether or not the plaintiff sought to avoid trouble, or whether his conduct was such as tended to provoke and cause trouble unnecessarily."

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

For the appellant there was a brief by *Jones & Stevens,* and oral argument by *B. W. Jones.* They argued, among other things, that exemplary damages should not be awarded in cases of this character. *Gillen v. M., St. P. & S. S. M. R. Co.* 91 Wis. 633; *Phettiplace v. N. P. R. Co.* 84 Wis. 412; *Atchison, T. & S. F. R. Co. v. Hogue,* 50 Kan. 40; *Van Dusan v. G T. R. Co.* 97 Mich. 439; *Hamilton v. Third Ave. R. Co.* 53 N. Y 25, 29; *Pine v. St. Paul City R. Co.* 50 Minn. 144; *Fitzgerald v. C., R. I. & P. R. Co.* 50 Iowa, 79; *Rose v. Wilmington & W. R. Co.* 106 N. C. 170; *Gibson v. E. T., V. & G. R. Co.* 30 Fed. Rep. 904; *Paine v. C., R. I. & P. R. Co.* 45 Iowa, 569; Booth, Street Railway Law, 558. By his unwillingness to take back the money or to make any explanation as to the ancient coin, and by daring the conductor to touch him, the plaintiff showed a willingness to annoy the conductor and perhaps set a trap, which the jury had a right to take into consideration in determining how deeply he was wounded or disgraced, and in determining whether the company should be punished by exemplary damages. His refusal to tender another coin when he had it in his hand was also significant. *Van Dusan v. G. T. R. Co.* 97 Mich. 439; *Cincinnati, H. & D. R. Co. v. Cole,* 29 Ohio St. 126; *Gibson v. E. T., V. & G. R. Co.* 30 Fed. Rep. 904, 905; *Scott v. C. P., N. & E. R. R. Co.* 53 Hun, 414; *Atchison, T. & S. F. R. Co. v. Hogue,* 50 Kan. 40; *Yorton v. M., L. S. & W. R. Co.* 54 Wis. 234, 241; *New Orleans & N. E. R. Co. v. Jopes,* 142 U. S. 18.

For the respondent there was a brief by *Richmond & Smith,* and oral argument by *J. B. Smith.*

CASSODAY, C. J.    This action is brought to recover dam-
ages for being wrongfully ejected from the defendant's
street car while riding thereon January 8, 1898, as a pas-
senger for hire.    The defendant answered by way of admis-
sions, denials, and counter allegations to the effect that the
conductor in charge of the car at the time received from the
plaintiff, in payment of his fare and the fare of a lady with
him at the time, a half dollar, and gave him back forty
cents in change; that on examining the half dollar he in
good faith believed, from its unusual and suspicious appear-
ance, that it was not genuine but counterfeit, and so in-
formed the plaintiff and requested him to take it back and
pay him in other money; that after the plaintiff had per-
sistently refused for several blocks he, in the discharge of
his duties, in a gentlemanly and courteous manner, took
hold of the plaintiff and put him off the car.

At the close of the trial the jury returned a verdict in
favor of the plaintiff, and assessed his damages at $500.
Thereupon the defendant moved the court to set aside the
verdict, and grant a new trial, on several grounds stated,
and, among others, for the reason that the damages were
excessive.    The court thereupon granted the motion upon
that ground, with leave to the plaintiff to remit from the
verdict $250, and, the plaintiff having filed notice of such
remission, the court ordered the verdict to stand at $250,
and that judgment be entered thereon in favor of the plaint-
iff for that amount.    From the judgment so entered, with
costs and disbursements, the defendant brings this appeal.

On the trial the plaintiff testified to the effect that they
had gone six or seven blocks after he had paid his fare,
when the conductor came to him and said that he had given
him a counterfeit half dollar; that he insisted that he had
not; that the conductor had the coin in his hand, and was
showing it to him; that the conductor wanted him to take
the coin back and give him back the forty cents in change,

which he refused to do, and told the conductor that if the coin was counterfeit he did not want to have it on him; that the conductor told him he had to get off or pay again, that he had ridden so far for nothing; and that he told the conductor that he would not pay again and that he would not get off until he got to his destination; that there were about twenty passengers in the car; that the conductor spoke very harsh and loud, so that it turned the attention of all the people in the car toward him and the young lady with him; that the conductor told him to get off, a second or third time; that when he refused to get off the conductor said he would put him off, and that he said, "All right, if you are big enough man to put me off, go right ahead; otherwise I will not get off," and so the conductor took hold of him by the collar, and pulled him, and said, "Come along, you have got to leave the car;" that he then got up and walked out peaceably, and the young lady went with him; that the conductor talked loud enough so that people could hear while the car was in motion; that he resisted the conductor when he attempted to take him off by holding back on the seat a little, but that he did not make him any trouble, and offered no other resistance than that of sitting back in his seat, and used no harsh words; that the conductor was more loud in his talk toward the end of the conversation; that at about the time he put him off he spoke abruptly and forcibly loud; that the conductor gave him his name, and that he wrote it down; that the conductor held the car at the crossing quite a while during the time they were talking; that he went to see the superintendent of the defendant the next morning, and told him about being put off the car; that the superintendent asked him his address, and told him that Mr. Taylor (the conductor) was one of the oldest conductors on the line, and one of their most faithful men, and that the company would stand by what he did; that the conductor had the power to protect the company's prop-

erty — had a perfect right to put him off the car; that the superintendent told him that he would look the matter up, in order to see whether the money was good or not. The lady who accompanied the plaintiff at the time, in addition, testified to the effect that when the conductor showed the plaintiff the half dollar he was very angry, and seemed to get out of patience with the plaintiff because he would not get off.

Exception is taken because the court, after having stated to the jury that the plaintiff was unlawfully ejected from the car and was therefore entitled to compensatory damages, charged them that, "in addition to the compensatory damages just spoken of, in actions of this nature the jury may, if they find the testimony warrants and they deem it proper, award punitory damages or damages by way of punishment to the defendant." And again, that, "in order to warrant the jury in assessing punitory damages in addition to compensatory damages, you must find, as a matter of fact, that the conductor guilty of the wrong complained of acted in a malicious, wanton, and reckless manner, showing a disregard of the plaintiff's rights and his duties under the facts and circumstances of the case, and that the officers of the company approved and ratified such conduct on the part of their servant." And again, that "if you find and believe that the defendant's servant was guilty of malicious, wanton, and reckless disregard of the plaintiff's rights at the time of the commission of the trespass, which was ratified and approved by defendant's officers, then you would be warranted, if you deem it proper, to award exemplary damages in addition to the compensatory damages you may determine." Exception is also taken because the court refused to instruct the jury that "if you find that the conductor acted in good faith and according to the rules of the company, and was not guilty of any insulting conduct or language, or of any violence toward the plaintiff, then the plaintiff cannot re-

cover any more than actual damages." And again, that "the plaintiff is not entitled to exemplary or punitory damages in this case, if you find that the conductor was guilty of no intentional offense or wrong, and if you find that there was no oppression, malice, or wanton or reckless injury done to the plaintiff."

After careful consideration we are all clearly of the opinion that the evidence in this case did not justify the court in submitting to the jury the question of punitory damages. This court correctly held, at an early day, that " in actions *ex delicto*, in awarding the damages, the jury may take into consideration not only the actual injury sustained by the plaintiff, but where the injury is inflicted under circumstances of aggravation, insult, or cruelty, with vindictiveness or malice, in view of all such circumstances they may award exemplary or punitory damages." *McWilliams v. Bragg*, 3 Wis. 424. That rule, although at times criticised, has been steadily adhered to. *Birchard v. Booth*, 4 Wis. 75; *Cramer v. Noonan*, 4 Wis. 240; *Craker v. C. & N. W. R. Co.* 36 Wis. 677, 678; *Bass v. C. & N. W. R. Co.* 42 Wis. 654, 673; *Brown v. Swineford*, 44 Wis. 286, 287; *Corcoran v. Harran*, 55 Wis. 125; *Templeton v. Graves*, 59 Wis. 98; *Nichols v. Brabazon*, 94 Wis. 553. The circumstances under which the controversy arose between the plaintiff and the conductor were peculiar, and called for mutual forbearance. Confessedly, the piece of money received by the conductor from the plaintiff was unusual in its appearance. Such appearance at first excited suspicion on the part of the conductor, which apparently, after more careful examination, ripened into a conviction that the half dollar was not genuine, and so he informed the plaintiff and asked him to take it back and give him other money in place of it. If the result had proved the money to be counterfeit, then it would have been the right and duty of the conductor to put the plaintiff off the car if he failed to pay his fare in good money.

But the result proved that the money was genuine. That being so, the plaintiff was lawfully entitled to ride to his destination, and hence rightfully entitled to compensatory damages for being thus wrongfully ejected. There can be no reasonable doubt that the conductor tendered back the same piece of money he received from the plaintiff. It is admitted that the plaintiff at the time had another half dollar in his possession. Had he consented to make the exchange when requested, there would have been no controversy. The mere fact that the conductor, in good faith, told him that the money was counterfeit was no insult. Few are so fortunate as never to have received a counterfeit coin. It is only the passing of such coin with knowledge of the fact which makes it an offense. We find nothing in the evidence to warrant the jury in finding that the plaintiff was ejected from the car "under circumstances of aggravation, insult, or cruelty," or "with vindictiveness or malice;" and hence we must hold that the court, in the portions of the charge quoted, improperly submitted to the jury the question of punitory damages, since there was no evidence upon which to base such verdict, and also that it was error to refuse to give the instructions above quoted.

In order to recover punitory damages against the defendant, it was not only necessary to prove that the conductor's conduct was such as to subject him to such damages, but that the defendant either in advance authorized such conduct, or, with knowledge of such conduct, ratified the same. *Milwaukee & M. R. Co. v. Finney,* 10 Wis. 388; *Craker v. C. & N. W. R. Co.* 36 Wis. 657; *Bass v. C. & N. W. R. Co.* 42 Wis. 654; *Eviston v. Cramer,* 57 Wis. 570. There is nothing in the plaintiff's testimony, as to the conversation which he had with the defendant's superintendent in respect to his having been put off the car, to warrant the jury in finding that the superintendent authorized or ratified any aggravating, in-

sulting, cruel, vindictive, or malicious conduct on the part of the conductor.

On the question of compensatory damages, we are constrained to hold that it was error to refuse to instruct the jury that, "in considering the question whether there was any injury to the feelings of the plaintiff, you have the right to consider his conduct and that of the conductor, and, among other things, whether or not the plaintiff sought to avoid trouble, or whether his conduct was such as tended to provoke and cause trouble unnecessarily."

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.