THOMAS MILNER HARRISON v. J. A. MAGOON, F. B. McSTOCKER, L. C. ABLES, DOROTHEA EMERSON (nee Lamb), T. E. COWART, J. H. KIRKPATRICK, A. E. POWTER, J. WOLFENDEN and GEO. D. MOORE.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED JUNE 9, 1902.    DECIDED OCTOBER 22, 1902.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

A partner may represent and bind the partnership and its other members in matters within the scope of the partnership business.

A partnership was formed for the purpose of engaging "in the business of administering the formulas known as the Hagey Gold Cure, and in the establishment and disposition of Institutes for the purpose of administering said formulas." The articles also contained clauses prohibiting any of the partners from creating any liability

on behalf of the company, providing for the contribution by the partners to a fund for the establishment and maintenance of institutes, and reciting that the members would not be bound for any debts and obligations incurred otherwise. Held, that, assuming that it was within the power of a partner to sell or dispose of the right to establish and conduct institutes in certain portions of the field owned by the partnership, nevertheless no partner as such had authority, in making such a sale, to bind the other partners by a contract to guarantee to the extent of £2000 satisfaction with the Hagey business and thus create a liability to pay that amount in case of dissatisfaction.

A partner has no authority as such to form a new partnership to include within its membership the original partnership or its members.

A power of attorney authorized the agent to act for the principal "in all matters connected with the A. P. & I. H. Co. and for that purpose to establish institutes and to sell the medicines compounded under the formulas belonging to the company; to sell and dispose of the said formulas in the district where he may be operating; and to do and perform all other acts and things that may be necessary and proper in the prosecution of the business of the said company". Held, that no authority was by this instrument granted to the agent to form a new partnership including within its membership the original association or its members.

General words in a power of attorney must be construed with reference to the specified objects to be accomplished.

Where a principal accepts the benefits of an unauthorized act of an agent with knowledge, actual or constructive, of all the material facts, he is deemed to have ratified the act and is bound thereby; but if the acceptance be in ignorance or under misapprehension of any of the essential circumstances relating to the transaction, this will absolve the principal from all liability by reason of any supposed assent to the previously unauthorized act of the agent.

A cancellation of one agreement is a good consideration for the execution of another.

It is a sufficient consideration for an agreement that the party claiming a benefit thereunder caused to be executed a release of an encumbrance standing against the property of the other party.

On April 10, 1897, the parties named as defendants in this action, excepting only J. Wolfenden, associated themselves as co-partners under the firm name of The African, Pacific and Indian Hagey Company, "in the business", as recited in the articles, "of administering the formulas known as the Hagey Gold Cure, and in the establishment and disposition of Institutes for the purpose of administering said formulas." Other material portions of the agreement are here inserted:

"The territory through which the operations of this Company will extend are the Islands of the Pacific and Indian Oceans, and the Continent of Africa, exclusive of the Hawaiian Islands. * * *

"The capital stock of this co-partnership shall consist of One Hundred and five thousand (105,000) dollars to be owned in the following proportions: T. E. Cowart 31740 dollars, J. H. Kirkpatrick 31740 dollars, A. E. Powter 11458 dollars, Geo. D. Moore 2062 dollars, J. A. Magoon 12500 dollars, F. B. McStocker 5000 dollars, L. C. Ables 8000 dollars, Dorothea Lamb 2500 dollars. * * *

"That T. E. Cowart, J. H. Kirkpatrick and L. C. Ables, shall at all times during the continuance of this partnership give their attendance and to the best of their skill and power exert themselves for the joint interest, profit and benefit of the partnership, and for such services they shall receive a salary of two hundred (200) dollars per month for each and every month as long as the said business is profitable, to be paid out of the proceeds of the business after the running expenses have been deducted. It is understood and agreed that there shall be no personal liability of any of the partners for the payment of these salaries.

"That all net profits shall be divided between the partners in proportion to the amount of capital stock of each, and that said co-partners shall bear and sustain all expenses and losses in accordance with the proportional share that each may hold. * * *

"That the said partners mutually agree to and with each other that during the continuance of the said partnership, none of them will give or endorse any note, or create any liability on behalf of the company.

"It is hereby expressly agreed and understood by the parties

to this agreement that a fund necessary for the establishment and maintenance of the Institutes in the territory before referred to, shall be placed in the hands of the said T. E Cowart, J. H. Kirkpatrick, and L. C. Ables, and that the members of this Company are not bound for any debts and obligations incurred otherwise. 　 * 　 * 　 *

"The interest of the partners is to be pooled, that is, no one partner can dispose of his interest or any part thereof without the consent of all the other partners thereto obtained in writing."

The powers of attorney were executed on the same day, one by J. A. Magoon and Dorothea Lamb to T. E. Cowart and J. H. Kirkpatrick and the other by McStocker to Ables, the two being, as to grant of powers, the same in form. That signed by Mc-Stocker read in part as follows: "I 　 * 　 * 　 * 　 do hereby make, constitute and appoint L. C. Ables 　 * 　 * 　 * 　 my true and lawful attorney in my name, place and stead to act for me in all matters connected with the African, Pacific and Indian Hagey Company and for that purpose to establish Institutes and to sell the medicines compounded under the formulas belonging to the company; to sell and dispose of the said formulas in the district where he may be operating; and to do and perform all other acts and things that may be necessary and proper in the prosecution of the business of the said company."

Cowart, Kirkpatrick and Ables proceeded to New Zealand and Australia. On October 1, 1897, the contract with Harrison and Gilmore now sued on and which is reported at length in the opinion filed on demurrer in this case (see 13 Haw. 339), was executed. Thereafter Harrison and Gilmore went to Tasmania for the purpose of establishing an institute and after remaining there some time the former gave notice that he was dissatisfied with the condition of the business and later brought this action. The case comes now to this court on 160 exceptions noted during the proceedings in the trial court.

One of the questions presented is whether or not Cowart, Kirkpatrick and Ables had authority to execute, as they purported to do, on behalf of Magoon, Mrs. Emerson and Mc-Stocker, the contract sued on, either as partners in the A. P.

& I. H. Co. or as attorneys-in-fact under the powers of attorney above quoted. At this point it may be observed that at the trial undisputed evidence showed that Harrison had, before entering into the agreement, full knowledge of the provisions of the original articles of association of the A. P. & I. H. Co. and of the powers of attorney and that he therefore dealt with the partners and agents at his risk and is bound by such limitations as are set forth in those instruments.

First, as to the articles of association. In acting under these alone, the partners in Australia would have the right, ordinarily possessed by partners, to represent and bind the partnership and its absent members in matters within the scope of the partnership business. A part of the business was stated by the agreement to be the "establishment and disposition of Institutes" for the purpose of administering the formulas. This might perhaps include within it the power to sell or dispose of the right to establish and conduct institutes in certain portions of the field owned by the company,—the right, as it has been termed in argument, to sell territory. In view, however, of the other and specific terms of the articles prohibiting any of the partners from creating any liability on behalf of the company, providing for a fund for the establishment and maintenance of the institutes and reciting that the members would not be bound for any debts and obligations incurred otherwise, we are of the opinion that no partner as such had authority to bind the other partners by a contract to guarantee to the extent of 2000£ satisfaction with the Hagey business and thus create a liability to pay that amount in case of dissatisfaction. Moreover, the transaction with Harrison and Gilmore was in reality the attempted creation of a new partnership intended to include within its membership the A. P. & I. H. Co. or its members individually. Neither under the general law concerning partnerships nor under the provisions of this contract could a partner enter into such a transaction and bind absent partners thereby.

Counsel for the plaintiff contends that the provision that "said co-partners shall bear and sustain all expenses and losses

in accordance with the proportional share" (of the capital stock) "that each may hold", contradicts and renders meaningless the clause "that the members of this company are not bound for any debts and obligations incurred otherwise." We do not think so. The two can be construed consistently with each other. It was provided in the agreement that a fund necessary for the institutes should be placed in the hands of the partners who were to have the actual and active management of the business. The clause as to expenses and losses supplemented this by indicating in what proportions the fund was to be made up and by declaring that in the event of a loss, total or partial, the members should suffer in the same proportions. It was entirely consistent with this to provide that beyond this the managers should not look to the absent members, as also that they should not give or endorse any note or create any liability on behalf of the company. In the matter of the salaries of the managers the provision was the same. Those officers, it was agreed must look to the profits of the business, and not to the members, for their compensation. Throughout the instrument the intent is clearly apparent to confine expenditures to the sum contributed by the members and to the profits of the business, and to fully protect the partners from any other outlay or liability.

The powers of attorney granted, in our opinion, little, if any, power not already possessed by the agents as partners. The agents as partners had authority to "establish institutes", "to sell the medicines compounded under the formulas belonging to the company" and "to sell and dispose of the said formulas in the district" where they might be operating. These are the only powers *specifically* named. Assuming that, as seems to be held by some authorities, the power to sell includes the power to sell on approval and, consequently, in this case, the power to guarantee satisfaction, still no authority was conferred by the letters of attorney to form a new partnership with either the A. P. & I. H. Co. or its members as partners therein, and that, as already stated, is what was done in the contract under consideration. In the letters, immediately following the specific grants

already referred to, is this: "and to do and perform all other acts and things that may be necessary and proper *in the prosecution of the business of the said company*". To make the original partnership a partner or its members partners in a new partnership with others is not an act "in the prosecution of the business of the company." As to the general words in the instruments, they "must be construed with reference to the specified objects to be accomplished". *Born v. Simmons*, 36 S. E. 956. See also *Luke v. Grigg*, 30 N. W. 170; *Cambell v. Association*, 163 Pa. St. 609. In our opinion, the contract sued on was unauthorized either by the articles of association of the A. P. & I. H. Co. or by the powers of attorney and consequently was not binding on Magoon, McStocker or Mrs. Emerson unless ratified.

Instructions in conformity with this view of the law were requested by the defendants and refused by the court. The charge of the court was evidently based on the theory that the execution of the contract sued on may have been within the scope of the business of the A. P. & I. H. Co. and that, if it was, it was authorized by the articles of association and by the powers of attorney and all the defendants would be bound thereby. Giving some definitions on the subject of "the scope of the partnership business", and also instructions as to the ordinary powers of partners, the presiding judge submitted to the jury the question of whether or not the execution of the contract was within such scope and therefore authorized. The verdict was for the plaintiff against all of the defendants. Whether the jury found that the contract was authorized by the articles or by the powers of attorney, or that it was not so authorized originally but was subsequently ratified, it is impossible for us to say; it may have been the former. The error was prejudicial.

The rule is well settled that where a principal accepts the benefits of an unauthorized act of an agent with knowledge, actual or constructive, of all the material facts, he is deemed to have ratified the act and is bound thereby; but if the acceptance be in ignorance or under misapprehension of any of the essential circumstances relating to the transaction, this will

absolve the principal from all liability by reason of any supposed assent to the previously unauthorized act of the agent.

Several exceptions were noted to the exclusion of certain letters offered in evidence by the defendants, which letters it is claimed would tend to show diligent inquiry and repudiation by some of the defendants of the acts of Cowart, Kirkpatrick and Ables. As to the correctness of these rulings no opinion need be expressed, for the questions may not arise on a new trial, or, if they do, they may arise under different circumstances. So, also, as to the sufficiency of the evidence adduced to support a finding of ratification and as to the correctness of the instructions given on the subject of ratification and, thereunder, of actual and of constructive knowledge. The evidence, the finding of the jury, and the instructions may each or all be different at the new trial.

If demand and tender before commencing the action were necessary, these were sufficiently shown. There was evidence tending to prove that at the time notice of dissatisfaction was given demand was made by Harrison upon Kirkpatrick to the effect that Harrison "wanted according to the contract, stock of the market value of 2000£" and that the partner named asked Harrison to write him a letter stating his best terms of settlement. Such a demand, we held on demurrer, was in effect "a demand accompanied by an offer to give in exchange his". (Harrison's) "intangible interest" in the Tasmania partnership. So far as an offer or tender of his intangible interest is concerned, the plaintiff, if he made the demand in those terms, did all that by the terms of the contract he was required to do in order to become entitled to the relief demanded. 13 Haw. 349.

Notice to and demand upon Kirkpatrick was sufficient notice to and demand upon all of the other members of the A. P. & I. H. Co., provided they all executed or subsequently ratified the Tasmania agreement. The promise contained in paragraph 4 sued on, was that "the company" would deliver the stock. The parties jointly and severally undertook that they as

partners of the company would do this. If, then, they can be held jointly, notice to one would be notice to all.

The fact, if fact it was, that prior to leaving for Tasmania Harrison was dissatisfied with the instructions given him as to the conduct of an institute, while it was evidence from which the jury might infer or find a lack of *bona fide* dissatisfaction with the condition of the partnership business in Tasmania, would not *necessarily* show bad faith. Harrison might have been dissatisfied with the instructions and yet be *bona fide* dissatisfied, after due trial, with the condition of the business. So, too, it was not improper for plaintiff to seek the advice of counsel as to his rights in the premises. If in consequence of such advice he proceeded to Tasmania to make an attempt to establish the business, that would not prevent his recovering provided always that the attempt and his subsequent dissatisfaction were both in good faith. The question was one to be determined by the jury upon all of the evidence adduced.

Two agreements, covering the same subject-matter but differing in some respects from that sued on, were signed before that of October 1st was executed. It is claimed that that of October 1st was without consideration. As to this we simply observe that the cancellation of one agreement may be good consideration for the execution of another, and also that if, as testified to by plaintiff, the consideration given by him for the second agreement was the sale and assignment of certain leases and sheep, subject to an outstanding encumbrance, and if, in order to obtain the third agreement, he caused the encumbrance to be cancelled or released, that would be sufficient consideration for the third agreement.

The remaining questions raised by the exceptions are such as may not arise upon a new trial.

The verdict is set aside and a new trial is ordered.

*Robertson & Wilder* for plaintiff.

*Kinney, Ballou & McClanahan, J. A. Magoon* and *J. Lightfoot* for defendants.