## DUKE P. KAHANAMOKU *v.* ADVERTISER PUBLISHING COMPANY, LIMITED, AN HAWAIIAN CORPORATION.

### No. 1385.

EXCEPTIONS FROM CIRCUIT COURT FIRST CIRCUIT.
HON. J. T. DeBOLT, JUDGE.

ARGUED MAY 26, 1922.                    DECIDED JULY 11, 1922.

EDINGS AND PERRY, JJ., AND CIRCUIT JUDGE BANKS
IN PLACE OF PETERS, C. J., DISQUALIFIED.

LIBEL AND SLANDER—*actual malice of agent—punitive damages.*

In an action against a corporation for damages for the publication of a libel, evidence of hatred and ill-will entertained by the writer of the article against the plaintiff is inadmissible in support of an award against the principal of punitive damages.

SAME—*meaning of words—instructions to jury.*

In such an action it is not error to refuse to so instruct the jury as to permit it to find that the term "slacker" was used in the alleged libel of and concerning the plaintiff as importing an evasion of military duty, when the circumstances are such that a verdict finding that the word was so used would have to be set aside as unsupported by any evidence.

### OPINION OF THE COURT BY PERRY, J.

This is an action for damages for an alleged libel published in the Pacific Commercial Advertiser, a daily newspaper printed and published by the defendant corporation. Upon an interlocutory appeal from a ruling by the circuit court upon defendant's demurrer this court held (25 Haw. 701) that certain portions of the article complained of (the whole article is set forth at length in that opinion and need not be here repeated) were not libelous but that the statement that the plaintiff was a "loafer," if it was in fact made in the article of and concerning the

plaintiff, was libelous *per se.* In that opinion the court discussed to some extent the meaning of the term "slacker," also used in the article in question, saying that it had a well established meaning which had its inception during the world war and was generally applied to a person who evaded or attempted to evade his military duty and that it also was sometimes used nowadays to convey another meaning very similar to that of the term "loafer;" but the court held as to this word that it was immaterial, in the consideration of the demurrer then before the court, in which sense the term was used in the article. The defendant having filed an answer of general denial the trial was had and proceeded in conformity with the views of the law laid down in the former opinion of this court as to the non-libelous nature of certain portions of the article, as to the meaning of the term "loafer" and as to the possibility of its application to the plaintiff. The jury rendered a verdict for damages in favor of the plaintiff in the sum of $1500. The matter comes to this court upon the plaintiff's exceptions.

It is not sought by the exceptions or by the argument presented to obtain a review in any respect of the law laid down in the former opinion above referred to, but it is claimed that prejudicial error was committed by the trial court in various respects. The two contentions most emphasized by the plaintiff in the argument, both written and oral, are these: (1) that evidence of the actual malice of the writer of the article in question was erroneously excluded and (2) that the court erroneously refused to permit the jury to consider the term "slacker" in the sense involving an attack upon patriotism.

The writer of the article was one Withington who at the time was reporter of sporting news and editor of the sporting page in which the article in question appeared. He was not, however, an officer of the corporation. The

plaintiff offered to prove by several witnesses and in various ways that Withington at the time of the preparation of the article bore hatred and ill-will towards the plaintiff and that in the writing of the article he was actuated by hatred and ill-will,—in other words, by actual malice as distinguished from that malice which the law implies from the face of the article itself and from the time of the writing and other circumstances surrounding the publication of the article. There was no evidence and no offer of evidence tending to prove that any of the officers of the corporation or even the editor in chief had at the time of the publication of the article any knowledge of this hatred and ill-will, harbored, as it is said, by Withington, or knowledge of any facts or circumstances indicating the existence of such actual malice.

Whether under circumstances such as these an employer, whether a corporation or an individual, is liable to punitive damages by reason of the actual malice of the servant, is a subject upon which the authorities are in conflict. Some of them hold that such liability exists, basing their view upon the same reasons evidently, of public policy, which have led generally to the adoption of the rule that an employer is liable in compensatory damages for the acts of his servants. Others take the view that since punitive damages are, as the term implies, intended to punish an offender for his malice and are, when awarded at all, in addition to compensatory damages which compensate a plaintiff for all the injury which he has in fact suffered, the employer is not liable to punitive damages unless there has been ratification and adoption of the article with knowledge of the actual malice of the employee. The general rule is that there can be no ratification without knowledge of the material facts. See for example: *Corrigan* v. *Bobbs-Merrill Co.*, 126 N. E. (N. Y.) 260, 264, 265; *Beacon Trust Co.* v.

*Souther,* 67 N. E. (Mass.), 345, 346; *O'Shea* v. *Rice,* 69 N. W. (Neb.) 308, 310; *Combs* v. *Scott,* 12 Allen 493, 496; *Owings* v. *Hull,* 9 Pet. 607, 629; *Robinson* v. *Ry. Co.,* 68 N. W. (Wis.) 961, 963. Upon principle it seems to us that the latter is the correct rule. Under the category of compensatory damages a plaintiff in a libel suit, as well as in other cases, obtains by the favorable verdict of the jury compensation for all that courts have held to be legitimate elements of injury. The plaintiff is thereby compensated, not only for the injury done to his reputation but also for the injury done to his feelings, for his mental suffering, for such difference in conduct by way of disapprobation as his friends and acquaintances may visit upon him by reason of the publication, for lack of sleep, if any, for worry, and for every other conceivable form of injury. When punitive damages are permitted to be added by the jury they are allowed purely upon the theory that the person or other entity against whom the verdict is rendered was actuated by actual, as distinguished from legal, malice; that he ought to be punished therefor; and that the community should be protected by discouraging a repetition by him or by others of such publications so actuated. The proceeding becomes to this extent somewhat criminal in its nature. So understanding the theory of punitive damages, they should not be awarded against one, whether a corporation or an individual, who was not himself moved by actual malice and who, although adopting an article as his own, had no knowledge of the hatred or ill-will entertained by the writer. Such punishment should be visited, if at all, upon the writer alone who entertained the malice. The following authorities support the view here adopted:

"Though the principal is liable to make compensation for a libel published or a malicious prosecution instituted by his agent he is not liable to be punished by exemplary

damages for an intent in which he did not participate. * * * The right to award them rests primarily upon the single ground—wrongful motive. It is the wrongful personal intention to injure that calls forth the penalty. To this wrongful intent knowledge is an essential prerequisite. * * * No doubt, a corporation, like a natural person, may be held liable in exemplary or punitive damages for the act of an agent within the scope of his employment, provided the criminal intent necessary to warrant the imposition of such damages is brought home to the corporation. * * * The jury were thus told, in the plainest terms, that the corporation was responsible in punitive damages for the wantonness and oppression on the part of the conductor, although not actually participated in by the corporation. This ruling appears to us to be inconsistent with the principles above stated, unsupported by any decision of this court and opposed to the preponderance of well considered precedents." *Lake Shore, etc., Railway Co.* v. *Prentice,* 147 U. S. 101, 110, 111, 112.

"Actual malice of the agent was imputed to the principals, who were held responsible for the malevolent act to the same extent as though they had themselves written and published the article. Punitory damages might be given against them under this rule, however innocent they might be of any bad motive or bad intent. Such is not the law in this state, whatever may be the rule elsewhere. .* * * We think that in justice there ought to be a difference in the rule of damages against principals for torts actually committed by agents in cases where the principal is, and in cases where the principal is not, a party to the malice of the agent. In the former class of cases the damages go upon the malice of the principal—malice common to principal and agent. In the latter class of cases the recovery is for the act of the principal through the agent, in malice of the agent not shared by the principal, the principal being responsible for the act but not for the motive of the agent. * * * And it must be deemed the settled law of this state that the principal is not responsible in exemplary damages for the actual malice of the agent, unless he has participated

in, or ratified and confirmed, the malicious act of the agent." *Eviston* v. *Cramer,* 57 Wis. 570, 577-579.

"Without stopping to review the history of this class of so-called damages, it is sufficient to say that the right to award them rests primarily upon the single ground—wrongful motive. The engrafting of this notion on to personal suits has resulted in an anomalous rule, the doctrine of punitive damages being a sort of hybrid between a display of ethical indignation and the imposition of a criminal fine. But whether we regard it in the one light or the other, it is the wrongful personal intention to injure that calls forth the penalty. To this wrongful intent knowledge is an essential prerequisite." *Haines* v. *Schultz,* 50 N. J. L. 481, 484-485.

"If two be sued the motive of one must not be allowed to aggravate the damages against the other. Nor should the improper motive of an agent be matter of aggravation against his principal." *Krug* v. *Pitass,* 162 N. Y. 154, 162.

"There is no finding that such acts were authorized or ratified by the defendant. Without this there can be no recovery as and for punitory damages. Such damages are given only by way of punishing the malice or oppression, and are usually graduated by the intent of the party committing the wrong. When the action is against the principal for the act of an agent the question of their assessment cannot properly be submitted to the jury unless there is evidence connecting the principal with such intent on the part of the agent." *Gaertner* v. *Bues,* 109 Wis. 165, 171.

To the same effect are: *Railroad* v. *Arms,* 91 U. S. 489, 493; *Railway* v. *Harris,* 122 U. S. 597, 609; *Craker* v. *Railway,* 36 Wis. 657, 675, 676; *Robinson* v. *Transit Co.,* 94 Wis. 345, 350; *Vassau* v. *Madison Electric Co.,* 106 Wis. 301, 307; *Craven* v. *Bloomingdale,* 64 N. E. (N. Y.) 169, 171; *Peterson* v. *Traction Co.,* 59 Atl. (N. J.) 456; *Corrigan* v. *Bobbs-Merrill Co., supra.*

Some evidence was offered and received which is claimed by the plaintiff to show not only legal malice but

also actual malice on the part of the officers of the defendant corporation and therefore on the part of the defendant itself. Of that evidence the plaintiff had full benefit under appropriate instructions which were given by the court. The verdict being general it is to be assumed that the jury awarded to the plaintiff exemplary as well as compensatory damages. 8 R. C. L. Sec. 210, p. 669; *Kuehne Preserving Co.* v. *Allen,* 148 Fed. 666, 667. Nor does the plaintiff complain by his exceptions on the subject of exemplary damages otherwise than in connection with the refusal of the court to admit evidence of the actual malice of Withington.

Another series of exceptions, argued at length both in the briefs and orally, presents the claim that the court erred in not permitting the jury to consider the word "slacker" as having been used in the article in the sense of importing an evasion of military duty. The article in question was published on October 29, 1919. The armistice was declared on November 11, 1918. Otherwise than technically the war ended on November 11, 1918. The selective service draft was not maintained in operation in Hawaii or in any other part of the Union after November 11, 1918. The article published contains not the slightest reference, direct or indirect, to any failure on the plaintiff's part to perform his military duty to his country during the war. No light is to be obtained from the article as to whether he did or did not do so. From beginning to end the article deals with the one subject of the plaintiff's failure to enter the swimming meet. The word "slacker," while first coming into use during the war and while then generally applied to a person who unlawfully evaded or attempted to evade his military duty, has come to have another equally well-known meaning, referring to one who evades or attempts to evade some other duty. We do not understand it to be correct

to say, as contended for by the plaintiff in support of his exceptions, that the *primary* or *ordinary* meaning of the word, at the time of the publication of the article, was that referring to non-performance of a military duty. Neither meaning can now be said to be primary. Each is now as well known as the other. The word is capable of the two meanings. It would have been error for the trial judge to so have instructed the jury as to permit it to find that the term "slacker" was in the article used of and concerning the plaintiff in the sense that he was lacking in patriotism or had failed in some rsepect to perform his duty to his country during the war. That would have been a subject and a meaning wholly foreign to the contents of the article. Ordinarily, it is true, when a word or an expression is capable of two or more meanings it should be left to the jury to determine in which sense it was used in the article alleged to be libelous. But when, as here, the article as a whole unmistakably shows that the word complained of is not used in one of its possible meanings, it would be error to permit the jury by the instructions to find that that was the meaning and sense in which the word was used.

The plaintiff further complains that he was not permitted to prove that the defendant did not at any time publish any apology or retraction of the article complained of. If there was any apology or retraction that was a matter of affirmative defense or mitigation to be proven by the defendant; and in the absence of any evidence to the contrary the jury would be justified and required to find that there was no apology and no retraction. No evidence of apology or retraction was adduced and the plaintiff in his argument to the jury had the full benefit of that fact.

Other exceptions have been argued. All have been considered by the court. We find no reversible error.

The exceptions are overruled.

*C. S. Davis* (*Brown, Cristy & Davis* on the brief) for plaintiff.

*A. G. Smith* (*Peters & Smith* on the brief) for defendant.