**In re WPMK CORPORATION, Debtor.**

**In re PARADISE PALMS VACATION CLUB, Debtor.**

**Thomas E. HAYES, Trustee in Reorganization for WPMK Corporation, and Ralph S. Aoki, Trustee in Reorganization for Paradise Palms Vacation Club, Plaintiffs,**

**v.**

**James Raymond QUINCY, et al., Defendants.**

**Bankruptcy Nos. 81–00424, 81–00724. Adv. No. 84–0016.**

United States District Court, D. Hawaii.

March 19, 1986.

Paul Alston, Shelby Anne Floyd, Jeffrey P. Crabtree, Paul, Johnson & Alston, Honolulu, Hawaii, for plaintiffs.

David A. Nakashima, Albert E. Peacock, Rush Moore Craven Kim & Stricklin, Honolulu, Hawaii, for Michel P. Stern.

Jamie A. Chuck, John C. Bryant, Jr., Torkildson Katz Jossem Fonseca & Moore, Honolulu, Hawaii, for Harold Sasaki and Sasaki & Vyas, CPA.

Dennis E. W. O'Connor, Wesley H.H. Ching, Chunmay Chang, Hoddick Reinwald O'Connor & Marrack, Honolulu, Hawaii, for Diamond & Sylvester, Josef Diamond, John N. Sylvester, Simon Wampold, Albert O. Prince, Richard M. Foreman, Craig S. Sternberg, Edwin J. Snook, John T. Petrie, William J. Cruzen, F. Douglas Ruud, John W. Hempelmann, and O.J. (Buz) Humphrey, III.

James M. Thomas, Diamond & Sylvester, Seattle, Wash., for Diamond & Sylvester.

## ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF PUNITIVE DAMAGES

SAMUEL P. KING, District Judge.

This case is an adversarial proceeding in bankruptcy court arising out of the operation and management of WPMK Corporation, a timeshare developer, and Paradise Palms Vacation Club (PPVC), its non-profit membership arm. Both corporations are now in bankruptcy. The plaintiffs, trustees for the combined estates, are suing assorted officers, directors, and other corporate agents for various alleged breaches of their fiduciary duties to the corporations.

In its second amended complaint, the plaintiffs allege that defendant, attorney Michel Stern, in performing legal services for WPMK and PPVC, acted for his own personal gain, failed to exercise the judgment, care and loyalty required of the attorney-client relationship, and otherwise breached his duties to the now-bankrupt corporations. The plaintiffs further assert that defendant Stern was a partner in and agent of the law firm of Diamond & Sylvester (D & S) and that all the acts at issue were undertaken in that capacity.

This order addresses the issue whether the plaintiffs can hold D & S vicariously liable for any punitive damages incurred for the alleged misconduct of its partner, defendant Stern, in representing the now-bankrupt corporations.

### I. Form of Motion and Standard of Review

Defendants D & S, joined by Stern, have brought a motion for partial summary judgment under Fed.R.Civ.P. 56 on the issue of punitive damages. At the outset, plaintiffs question the form of the motion. Defendants do not rely on any material outside of the pleadings, and thus, plaintiffs assert that the motion should be treated as one under Fed.R.Civ.P. 12(b)(6).[1] This court agrees.

Although the motion may be denominated one for summary judgment, if it rests on the pleadings alone, and the court does not look to additional materials, the motion is the functional equivalent of a motion to dismiss for failure to state a claim on which relief may be granted. Wright, Miller & Kane, *Federal Practice and Procedure: Civil* § 2713, at 593–94 (2d ed. 1983). Accordingly, in determining whether the complaint is sufficient to state a legal claim on the issue of punitive damages, this court accepts all material facts in the pleadings as true and reviews the complaint liberally and in the light most favorable to the plaintiffs.

---

1. After receiving the plaintiffs' opposition memorandum, defendants hurriedly filed a supplemental affidavit to support their motion. However, this affidavit is not necessary to the resolution of the defendants' motion, and this court has not considered it in rendering this decision.

## II. *Choice of Law*

In order to determine the applicable substantive law on punitive damages, this court must first address the choice of law rules governing this issue. Defendants argue that a bankruptcy court may freely choose its choice of law rules in an adversarial proceeding and that this court should apply a "fundamental factors" test, but that either this conflicts approach or Hawaii's conflicts law mandates the application of Washington substantive law on punitive damages. The plaintiffs counter that the "fundamental fairness" test, the Hawaii conflicts rules, and the Washington choice of law rules all point to the application of Hawaii substantive law.

Although the choice of law rules of the forum state govern under a diversity action, the courts are split on which conflicts rule applies in bankruptcy. *See, e.g., Fox v. Peck Iron & Metal Co.*, 25 B.R. 674, 684–85 (Bankr.S.D.Cal.1982). Some courts do apply the choice of law rules of the forum state, in this case Hawaii. *E.g., In re Bagley*, 6 B.R. 387, 389 (N.D.Ga.1980). However, some courts hold that bankruptcy courts may make an independent determination of this issue, with the court selecting the choice of law rule that would be the fairest under the circumstances of the case. *E.g.*, 4 Collier on Bankruptcy ¶ 544.02, at 544–10 (15th ed.1985); *Wallace Lincoln-Mercury Co. v. Gentry*, 469 F.2d 396, 400 n. 1 (5th Cir.1972). *See also In re Holiday Airlines Corp.*, 620 F.2d 731, 733–34 (9th Cir.), *cert. denied*, 449 U.S. 900, 101 S.Ct. 269, 66 L.Ed.2d 130 (1980). It is unnecessary for this court to enter the fray on this issue, however, since under any of the potentially applicable conflicts rules, on balance, the Hawaii substantive law would govern.

### A. *Fundamental Factors Analysis*

Defendants argue that this court, sitting in bankruptcy, is not bound by traditional diversity rules but should make its own independent judgment on conflicts law. Defendants urge this court in applying a federal choice of rules test, however, to avoid the use of "mechanical tests," such as the "most significant relationship" test or the "governmental interest" analysis. Instead, this court should base its choice of law on what the "fundamental factors" are in this case. Under this analysis, defendants ask this court to perform its time-honored task of considering and balancing all the "fundamental factors."

Defendants cite the following factors as relevant to their assertion that the substantive law of Washington should apply: (1) D & S was formed as a partnership under Washington law; (2) there are no allegations that D & S or any of its partners, except Stern, committed any alleged wrongful acts; (3) D & S is being held liable only vicariously through the acts of Stern; and (4) no one in Hawaii would really benefit from the award of punitive damages since most of the creditors are not Hawaii residents.

Plaintiffs argue, on the other hand, that the court should consider the facts that (1) the fraudulent scheme involved property in Hawaii; (2) most of the timeshare purchasers were present in Hawaii when they made their purchase; (3) Stern was involved in many activities that had a significant impact here in Hawaii; (4) Hawaii has a strong interest in litigation involving property within its borders; and (5) Hawaii has a strong interest in protecting its citizens and its visitors from unfair business practices and frauds.

The factors cited by the plaintiffs persuade this court that Hawaii substantive law should govern. This court finds it particularly relevant that the property involved in the transactions is located in Hawaii. Further, as the plaintiffs have recognized, Hawaii has considerable interest in protecting its citizens as well as tourists who come to the state from the type of fraudulent transactions that are alleged here.

This application of Hawaii law is further supported by *Fox v. Peck Iron & Metal Co.*, 25 B.R. 674 (Bankr.S.D.Cal.1982). *Fox* involved real property in California that

was part of an alleged fraudulent sale/leaseback transaction. The court noted that Virginia had more "contacts" since it is the jurisdiction where the defendant conducted business, most of the negotiations took place, and the documents were executed. 25 B.R. at 684. On the other hand, some of the negotiations took place in California, and the property was in California. The bankruptcy court, applying the federal choice of law approach and exercising its independent judgment found itself confronted with conflicting principles. With respect to the debt obligation, the place of payment, here Virginia, normally governs conflicts questions, but conflicts of law issues involving property interests are normally determined by the law of the situs of the property. Faced with this issue, the court held that it would defer to the situs of the property and apply the law of California. *Id.* at 685. Alternatively, the court held that under the conflicts rules of California, which employ a "governmental interest" approach, California law would also apply, since it has a strong interest in litigation over realty within its borders and has a strong policy of protecting even commercial or corporate borrowers. *Id.* at 687.

## B. *Hawaii Choice of Law Rules*

Some bankruptcy courts would apply the conflicts law of the forum state. Hawaii's conflicts test, which was laid out in *Peters v. Peters*, 63 Hawaii 653, 634 P.2d 586 (1981), espouses "an assessment of the interests and policy factors involved with a purpose of arriving at a desirable result in each situation." 634 P.2d at 593. The *Peters* court stressed, among other factors, the effect its decision would have on the citizens of Hawaii, in general.[2]

In *Jenkins v. Whittaker Corp.,* 545 F.Supp. 1117 (D.Hawaii 1982), *Peters* was applied to determine that Hawaii substantive law should govern in a diversity wrongful death case arising from the death of a serviceman. The court reasoned that

applying Hawaii law would simplify judicial proceedings and significantly further predictability since so many servicemen here are legal residents of other states, and that "perhaps most importantly, Hawaii has a distinct interest in having its laws applied in cases such as this in order to give its citizens the level of protection the state deems appropriate." 545 F.Supp. at 1118.

The Hawaii choice of law rule would dictate the application of Hawaii substantive law in this case too, since Hawaii has a strong interest in seeing that its many visitors are protected from fraudulent transactions.

## C. *Washington Choice of Law Rules*

Plaintiffs argue that even under the Washington conflicts rules, Hawaii law should govern. This court agrees. Washington State has adopted the "most significant relationship" test in determining the choice of substantive law. Under this test, "the court is not simply to count contacts, but must consider the competing policies and interests of the two states with respect to application of their laws." *Kammerer v. Western Gear Corp.,* 27 Wash.App. 512, 618 P.2d 1330, 1336 (Ct.App.1980), *aff'd,* 96 Wash.2d 416, 635 P.2d 708 (1981). In *Kammerer,* which involved fraudulently induced contracts, the court analyzed the many contacts in and the policy interests of both Washington (the forum state) and California (the state in which the negotiations and fraudulent representations occurred). The court ultimately applied California law, largely because of that state's interests in protecting its citizens against fraud and in deterring fraudulent activities by corporations having substantial business activity within its borders.

While most of the defrauded creditors in the instant case are not from Hawaii, the properties they purchased are in Hawaii, and Hawaii has a substantial interest in deterring the type of conduct at issue in this case. Thus, even if this court applied

---

**2.** The *Peters* rule has been criticized for invariably leading to the application of Hawaii law. *See* Note, *Peters v. Peters: Is There Really a*

*Choice of Law Under Hawaii's Interest Analysis?,* 5 U.Hawaii L.Rev. 113 (1983).

the Washington conflicts rules, Hawaii substantive law on punitive damages governs this case.

### D. *Principles of Depecage*

■ Defendants argue that since the plaintiffs have cited Washington law in various memoranda on other motions submitted to this court, they have "selected Washington law to bind Diamond & Sylvester" and are "now estopped from applying any law but Washington's to the issue of punitive damages." This argument is wholly without merit. As this court has noted,

> The application of more than one law to a choice of law problem is not unique.
>
> ....
>
> · Traditional choice of law rules have ... been used to apply different rules of law to different issues arising in the same case. The application of different choice of law rules to more than one conflict of law issue arising in a case has been given the French name *depacage* by some commentators. *See, e.g.,* R.A. LeFlar, American Conflicts of Law (3d ed. 1977); Reese, *Depecage: A Common Phenomenon in Choice of Law,* 73 Colum.L.Rev. 58 (1973). ...

*DeRoburt v. Gannett Co.,* 83 F.R.D. 574, 581 n. 29 (D.Hawaii 1979) (applying Nauru law on defamation as modified by the limitations of the First Amendment and Hawaii public policy); *see also Babcock v. Jackson,* 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963) (applying New York law to host-guest issue and Ontario law to defendant's negligence issue); R. Weintraub, *Commentary on the Conflicts of Law* 72–79 (2d ed.1980).

### III. *The Substantive Law*

#### A. *Hawaii Law on Punitive Damages*

The Hawaii courts have never addressed vicarious liability for punitive damages in the context of a partnership. Hawaii common law on principal-agency relationships, on which partnership principles are based, is clear however. Hawaii courts are reluctant to impose punitive damages on the principal for actions of the agent solely because of the principal-agency relationship.

Generally, the purpose of damages is to compensate for a wrong. Punitive damages, however, are an exception to this compensatory theory, because they are intended to punish a wrongdoer and to deter others from similar actions. In this regard, Hawaii courts have adopted the reasoning of the United States Supreme Court in *Lake Shore & Michigan Southern Railway Co. v. Prentice,* 147 U.S. 101, 13 S.Ct. 261, 37 L.Ed. 97 (1893). In holding that punitive damages could not be assessed against one who is merely vicariously liable, the Court reasoned

> Exemplary or punitive damages, being awarded, not by way of compensation to the sufferer, but by way of punishment of the offender, and as a warning to others, can only be awarded against one who has participated in the offense. A principal, therefore, though of course liable to make compensation for the injuries done by his agent within the scope of his employment, cannot be held liable for exemplary or punitive damages, merely by reason of wanton, oppressive or malicious intent on the part of the agent.

147 U.S. at 107, 13 S.Ct. at 263. *See also Kahanamoku v. Advertiser Publishing Co.,* 26 Hawaii 500, 503–04 (1922); *Kealoha v. Halawa Plantation,* 24 Hawaii 579, 588–89 (1918).

Accordingly, Hawaii courts will not impose punitive damages on the principal unless the principal expressly or impliedly authorizes or ratifies the act, or unless the principal accepts the benefits of the unauthorized acts with actual or constructive knowledge of all the material facts. *E.g., Harrison v. Magoon,* 14 Hawaii 418, 424–25 (1902); *Kahanamoku v. Advertiser Publishing Co.,* 26 Hawaii at 502–05; *Kealoha v. Halawa Plantation,* 24 Hawaii at 588–89.

For example, in *Kealoha v. Halawa Plantation,* 24 Hawaii 579, 588–89 (1918), the Hawaii Supreme Court overturned the trial court's award of punitive damages to

the Halawa Plantation for damages caused by an employee who trespassed on the plaintiff's land and razed his home. The court held that there was no evidence that the corporation or any of its executives expressly or impliedly approved of the wrongful acts. *See also Kahanamoku v. Advertiser Publishing Co.*, 26 Hawaii 500, 502–05 (1922) (newspaper not liable in punitive damages for actual malice of an employee in writing a libelous article).

### B. *Hawaii Uniform Partnership Act*

Hawaii partnerships are governed by the Uniform Partnership Act (U.P.A.). Under Hawaii Rev.Stat. § 425–113,

> Where by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership or with the authority of his co-partners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefore to the same extent as the partner so acting or omitting to act.

Plaintiffs argue that this statute changes the common law rule on punitive damages when applied to partnerships. They assert that D & S should be liable for all compensatory and punitive damages incurred by Stern if Stern was acting either in the ordinary course of the law firm's business or with the express or implied authority of his co-partners.[3]

Hawaii common law rules of statutory construction are well settled. Statutes in derogation of the common law are strictly construed, and a court will not find that the common law has been superseded in an area not specifically mentioned by a statute unless it appears that it was the legislative intent to supersede the common law. *E.g., State v. Taylor*, 49 Hawaii 624, 628, 425 P.2d 1014 (1967); *In re Vockrodt*, 50 Hawaii 201, 222, 436 P.2d 752 (1968); *Rathburn v. Kaio*, 23 Hawaii 541 (1916) (statute holding a father vicariously liable for the torts of his minor children to be strictly construed because in derogation of common law); *Lucas v. Redward*, 9 Hawaii 23,

**3.** The few cases interpreting section 13 of the Uniform Partnership Act (the counterpart to Hawaii Rev.Stat. § 425–113) are in conflict. This conflict, however, appears to derive from the individual state's common law treatment of vicarious liability for punitive damages. *Cf.* Annot., 14 A.L.R. 1335 & n. 6 (1982). Thus, for example, plaintiffs' reliance on *Meleski v. Pinero International Restaurant, Inc.*, 47 Md.App. 526, 424 A.2d 784 (Ct.Spec.App.1981) is unavailing.

In *Meleski*, the Maryland Court of Special Appeals affirmed the award of punitive damages against a partnership for fraudulent acts by a partner. First, the court held that there was sufficient evidence for a jury to have found that the partners authorized or ratified the acts. 424 A.2d at 790. Alternatively, the court recognized authority to the contrary in other states, but stated that in Maryland a partner need only be acting within the scope of partnership business to hold the partnership vicariously liable for punitive damages. *Id.* This rule stemmed from Maryland's "well settled" rule of derivative liability for punitive damages in principal-agency relationships generally. The court recognized that some courts will not hold a partner liable for punitive damages absent authorization, ratification, or participation, but stressed that "*the Maryland cases take a less strict view.*" 424 A.2d at 792, quoting from *Safeway Stores Inc. v. Barrack*, 210 Md. 168, 176–77, 122 A.2d 457 (1956) (emphasis supplied by court). In sum-

mary, although the court did not specifically address the issue, it appears that the Uniform Partnership Act did not change the common law rules of vicarious liability in Maryland.

*Husted v. McCloud*, 450 N.E.2d 491 (Ind.1983), is more relevant to this case because Indiana has a similar approach to Hawaii on punitive damages. The lower court applying U.P.A. § 13 had found the partnership liable for punitive damages: "Finally, a penalty involving an award of punitive damages was granted against [the defendant]. The application of the statute is clear—the partnership is liable to the same extent as the partner ... [under] this express statutory language." *Husted v. McCloud*, 436 N.E.2d 341, 347 (Ind.App.1982), *vacated by* 450 N.E.2d 491 (Ind.1983). The Indiana Supreme Court reversed on appeal based on the state's common law approach to punitive damages. The court explained:

> [T]he rationale behind punitive damages in Indiana prohibits awarding such damages against an individual who is personally innocent of any wrongdoing. Punitive damages are not intended to compensate a plaintiff but rather are intended to punish the wrongdoer and thereby deter others from engaging in similar conduct in the future. Accordingly, we now hold that the trial court erred by adjudging the innocent partner in this case responsible for punitive damages.

450 N.E.2d at 495 (citations omitted).

25 (1893); *Maguire v. Tong Wo*, 5 Hawaii 41, 43 (1883).

The recent case of *Lauer v. Young Men's Christian Association*, 57 Hawaii 390, 401–03, 557 P.2d 1334 (1976), is particularly relevant on this point. In *Lauer*, the Hawaii Supreme Court specifically addressed whether a city's liability for damages under a statute permitting "suits ... for the recovery of ... damages" against a city included vicarious liability for punitive damages. The court determined that the City of Honolulu should not be liable for punitive damages, absent clear and unambiguous statutory language to the contrary, because they would not serve a deterrent or retributive effect when applied to a municipal corporation. Thus, the court refused to enlarge the city's liability for compensatory damages under common law principles without the explicit statutory recognition of punitive damages.

Hawaii Rev.Stat. § 425–113 does not expressly refer to punitive or exemplary damages, and the interpretation urged by the plaintiffs is in derogation of Hawaii's common law on vicarious liability for punitive damages in principal-agency relationships. Therefore this court finds that § 425–113 does not supersede the common law on this point.

██ In order to hold a partnership liable for punitive damages incurred by one of its partners, a litigant must show that the partnership authorized, ratified, controlled, or participated in the alleged tortious activity. Of course, authorization or ratification need not be express. Where the partnership accepts the benefits of the unauthorized acts of its partner, with actual or constructive knowledge of all the material facts, it is deemed to have ratified the act. *Harrison v. Magoon*, 14 Hawaii 418, 424–25 (1902). Similarly, knowledge may be imputed to the partnership under certain circumstances. *See* Hawaii Rev. Stat. § 425–112.

### C. *Conclusion*

██ In its Second Amended Complaint, the plaintiffs merely alleged that Stern "was a partner in and agent of the law firm of D & S and all acts performed by Stern were undertaken in that capacity." Even accepting these allegations as true, as this court must under a Rule 12(b)(6) motion, they are insufficient to state a claim for punitive damages against D & S under Hawaii Rev.Stat. § 425–113.

THEREFORE IT IS HEREBY ORDERED that defendants' motion for partial summary judgment on the issue of punitive damages, having been reviewed by this court as a motion pursuant to Fed.R.Civ.P. 12(b)(6), is GRANTED. Plaintiffs, however, are granted leave to amend their complaint to allege sufficient facts to state a claim, if the factual record warrants such amendments.