CHEMICAL BANK OF ROCHESTER, Respondent-Appellant, v JOHN HASKELL, Appellant-Respondent. (Appeal No. 1.)

PADDY CHAYEFSKY, as a Limited Partner in QUARRY SQUARE ASSOCIATES, Individually and on Behalf of All Others Similarly Situated, Appellant-Respondent, v CHEMICAL BANK OF ROCHESTER, Respondent-Appellant. (Appeal No. 2.)

HALSEY F. SHERWOOD et al., as Limited Partners in QUARRY SQUARE ASSOCIATES, Individually and on Behalf of All Others Similarly Situated, Appellants-Respondents, v CHEMICAL BANK OF ROCHESTER, Respondent-Appellant. (Appeal No. 3.)

Fourth Department, June 1, 1979

## APPEARANCES OF COUNSEL

*Salamone & Aloi (Frank Aloi* of counsel), for appellants-respondents.

*Lacy, Katzen, Jones & Ryen (Richard B. Callen* of counsel), for respondent-appellant.

## OPINION OF THE COURT

SCHNEPP, J.

Appellants, John Haskell, Paddy Chayefsky, Halsey F. Sher-

wood and Arthur Giliotti, together with John F. Kelly and Edward Fine (not parties to the instant actions) are limited partners in Quarry Square Associates ("Quarry"), a limited partnership organized for the purpose of developing an apartment complex in Buffalo, New York. Stanndco Developers, Inc. ("Stanndco"), a real estate development corporation which organized the partnership, is a class A general partner of Quarry. Stanndco conducted its business by purchasing land, obtaining financing, searching out investors, forming limited partnerships and then establishing itself as general managing partner responsible for the contruction and operation of the projects. David J. Quigley, Anthony J. Caldarone and Charles P. Laiosa, major shareholders in Stanndco, are class B general partners of Quarry.

The limited partners signed the articles of partnership of Quarry in December, 1972. Their individual capital contribution consisted of the payment of cash and the execution and delivery of three negotiable notes payable to Quarry which contained identical terms and were due December 1, 1973, December 1, 1974 and June 1, 1975. On February 13, 1973 Sherwood and Giliotti signed an amendment to the limited partnership agreement under which their notes were returned and payment of the balance of their capital contribution was conditioned upon the completion of certain percentages of construction of the apartment complex. At the behest of Quigley, Stanndco's chief executive officer, Sherwood and Giliotti re-executed and delivered their notes to Quarry on March 26, 1973 ostensibly for its credit files. On May 25, 1973 the Chemical Bank of Rochester ("Chemical"), formerly known as the State Bank of Hilton, purchased the notes at a discount. Upon Stanndco's indorsement and delivery of the notes to Chemical, the bank then delivered to Stanndco a bank draft for the purchase price. The draft was payable to the order of Stanndco. By letters dated July 26, 1973 Chemical notified the individual makers that it had purchased the notes.

When the December, 1973 notes came due Haskell defaulted while Chayefsky, Sherwood and Giliotti made payment. In January, 1974 mortgage foreclosure proceedings against the project were instituted, a receiver appointed, and the mortgage eventually foreclosed. Subsequently, the project was completed by the mortgagee. In February, 1974 Stanndco filed a petition in bankruptcy. Haskell, Chayefsky, Sherwood and

Giliotti then defaulted on the remainder of the notes held by the bank. Kelly and Fine paid their obligations on the notes.

Action No. 1 was instituted by Chemical against Haskell pursuant to CPLR 3213 to recover $63,000 with interest on his three outstanding notes and reasonable attorneys' fees. Action No. 2 was instituted by Chayefsky, as a limited partner in Quarry suing individually and on behalf of all others similarly situated, against Chemical seeking a declaration of his rights, cancellation of the notes and a judgment ordering repayment of the amount of the first note which he paid in December, 1973. Sherwood and Giliotti brought a similar action requesting the same relief. In these actions Chemical interposed a counterclaim for the unpaid principal amount of the notes due December 1, 1974 and June 1, 1975 in addition to interest and legal fees. The cases were tried together and judgment was entered in favor of Chemical for the amounts stated in the notes plus interest from the date of default and attorneys' fees. The court found that Chemical was the holder in due course of all the notes in question and took free of all defenses raised by the makers.

On appeal the appellant makers argue that Chemical is not a holder in due course and is subject to the defenses of fraud, misrepresentation and failure of consideration and that the award of attorneys' fees was improper. Sherwood and Giliotti further posit the defense of fraud in the factum. Chemical argues that appellants failed to prove a valid defense to the enforcement of the notes, that it is a holder in due course, and that the award of attorneys' fees was inadequate. In reply appellants argue that the indorsement of the notes by Stanndco to Chemical without the written consent or ratification of the limited partners violated section 98 of the Partnership Law and the partnership agreement, and constitutes a complete defense even if Chemical is a holder in due course.

We hold that Trial Term was correct in dismissing the defenses of fraud and misrepresentation. As appellants conceded at the conclusion of their proofs, no credible testimony supporting the defenses of misrepresentation or fraud was presented at trial.

At the same time the court allowed appellants to amend their pleadings to conform to the evidence by adding the defense of failure of consideration. Appellants argue that the abandonment of the Quarry project deprived them of the following benefits: (1) their equity interest in the apartment

complex, (2) the reasonable expected appreciation of the project and profits upon eventual sale, (3) rental income from apartment units, (4) immediate tax advantages in the form of deductions during construction of interest on interim financing money and other expenses of construction, and (5) continuing tax advantages in the form of deductions of depreciation allowances and other benefits commonly arising from tax shelters. They urge that the continued construction of the project to completion was an express or implied condition precedent to payment of the notes and maintain that the abandonment of the project and the bankruptcy of Stanndco made it impossible to fulfill these conditions.

■ This defense has no merit as applied to appellants Chayefsky and Haskell because they received an equity interest in Quarry in consideration for the execution and delivery of their notes. Neither the bankruptcy of Stanndco nor noncompletion of the project releases them from their obligations. It cannot be inferred from the proofs that continued solvency or completion of the construction was intended by the parties to operate as a condition precedent to the payment of the notes (see 10 NY Jur, Contracts, § 252).

However, upon the execution of the amended articles of limited partnership by Sherwood and Giliotti, payment of their contribution was expressly conditioned upon completion of certain percentages of construction of the apartment complex. This condition precedent was not met when the specified percentages were not completed. This failure may be asserted as a valid defense by Sherwood and Giliotti against Quarry and Stanndco. The defense remains viable even though this condition was not expressed in the negotiable instruments they executed. Their defense of fraud in the factum, however, is meritless and was properly dismissed by the trial court. There is no proof that they were ignorant of the contents of the negotiable notes which they executed on March 26, 1973 following the execution of the amended agreement on February 13, 1973 or that they did not intend to sign them. The notes, which are clearly legible on their face, do not condition payment upon the completion of construction.

On appeal appellants further contend as a complete defense that the notes were transferred in violation of the Partnership Law. This argument was not specifically articulated by appellants before the trial court and generally this court will not consider questions not raised at trial. However, since the issue

was litigated, the interests of justice mandate our consideration of this argument. We are not confined to a review of the particular grounds upon which the trial court acted (Carmody-Wait 2d, NY Prac, §§ 70:302, 72:127), and if necessary we are empowered to make original findings of fact overruling those made by the trial court and to render judgment accordingly (Carmody-Wait 2d, NY Prac, § 72:158).

The facts relating to this defense are not in dispute. In the spring of 1973 Quigley, chairman of the board, and chief executive officer of Stanndco, sought a loan for Stanndco from Chemical. Following his initial contact, in a letter to the bank dated May 1, 1973 he described the financial structure of Quarry, the status of the project and the capital contribution of each limited partner. He outlined in detail the due dates and amounts of each note and stated, "Stanndco would like to borrow $315,000 with these notes as collateral". There was evidence that during this period of time Stanndco, which was involved in various construction projects, was experiencing financial difficulty. Chemical rejected this offer and agreed to purchase the notes, which had a face value of $315,000, at a discount. Upon receipt of the indorsed notes it delivered a bank draft in the amount of $274,390.32 payable to the order of Stanndco which was received and deposited by Stanndco in its account at the Central Trust Company. Although none of the limited partners were advised of Stanndco's disposition of the partnership notes, Stanndco, as general partner of Quarry, executed and delivered an estoppel certificate to Chemical which certified that there were no defenses or offsets against the notes.

Section 98 of the Partnership Law provides in part that a "general partner shall have all the rights and powers and be subject to all the restrictions and liabilities of a partner in a partnership without limited partners, except that without the written consent or ratification of the specific act by all the limited partners, a general partner * * * [has] no authority to * * * [p]ossess partnership property, or assign [his] rights in specific partnership property, for other than a partnership purpose" (Partnership Law, § 98, subd [1], par [d]).

■ Stanndco breached its fiduciary duty to Quarry and violated section 98 of the Partnership Law when it indorsed the notes to itself, sold them, and deposited the proceeds of the sale in its corporate account. This action by Stanndco also violated the articles of limited partnership which prohibited

the disposition of a substantial part of the partnership's assets without the prior written consent of the limited partners. Moreover, Stanndco breached the articles which require that the general partner maintain bank accounts for the deposit of partnership funds. Stanndco's deposit of the proceeds of the sale in its own corporate account evidenced its intent to "[p]ossess partnership property * * * for other than a partnership purpose" (Partnership Law, § 98, subd [1], par [d]). The silence of the limited partners upon the receipt of Chemical's letter dated July 26, 1976 and their payment of the December, 1973 notes did not constitute ratification by them of Stanndco's negotiation of the notes. There is nothing to show that the limited partners had any reason to suspect that Chemical held the notes other than for an indebtedness of Quarry in furtherance of its business.

The question remains as to the effect of the above violations of the Partnership Law and the original articles of limited partnership. It is clear that under the terms of section 3-306 of the Uniform Commercial Code[1] the appellant makers here have a valid defense to the enforcement of the notes by Chemical, if the bank is not deemed a holder in due course.

The determinative issue at this juncture is whether the weight of the evidence presented at trial supports a finding that Chemical was a holder in due course of the partnership notes.

The pertinent subdivision of section 3-302 of the Uniform Commercial Code provides:

"(1) A holder in due course is a holder who takes the instrument

"(a) for value; and

---

1. Section 3-306 of the Uniform Commercial Code provides:

"Unless he has the rights of a holder in due course any person takes the instrument subject to

"(a) all valid claims to it on the part of any person; and

"(b) all defenses of any party which would be available in an action on a simple contract; and

"(c) the defenses of want or failure of consideration, non-performance of any condition precedent, non-delivery, or delivery for a special purpose (Section 3-408); and

"(d) the defense that he or a person through whom he holds the instrument acquired it by theft, or that payment or satisfaction to such holder would be inconsistent with the terms of a restrictive indorsement. The claim of any third person to the instrument is not otherwise available as a defense to any party liable thereon unless the third person himself defends the action for such party."

"(b) in good faith; and

"(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."

Subdivision (19) of section 1-201 of the Uniform Commercial Code defines good faith as "honesty in fact in the conduct or transaction concerned". Subdivision (25) of the same section provides that a "person has 'notice' of a fact when (a) he has actual knowledge of it; or (b) he has received a notice or notification of it; or (c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists.

"A person 'knows' or has 'knowledge' of a fact when he has actual knowledge of it. 'Discover' or 'learn' or a word or phrase of similar import refers to knowledge rather than to reason to know. The time and circumstances under which a notice or notification may cease to be effective are not determined by this Act."

The existence merely of suspicious circumstances does not, without more, amount to notice of an infirmity or defect *(Hall v Bank of Blasdell,* 306 NY 336, 340; Uniform Commercial Code, § 3-304, subd [7]).[2] The Court of Appeals in *First Nat. Bank of Odessa v Fazzari* (10 NY2d 394, 399-400) stated the rule in New York: " 'The rights of the holder [of a negotiable instrument] are to be determined by the simple test of honesty and good faith, and not by speculations in regard to the purchaser's diligence or negligence' [citations omitted]. 'The requirement of the statute is good faith, and bad faith is not mere carelessness. It is *nothing* less than guilty knowledge or *willful ignorance'* [citations omitted]" (emphasis supplied). "Even if his actual good faith is not questioned, if the facts known to him should have led him to inquire, and by inquiry he would have discovered the real situation, in a commercial sense he acted in bad faith and the law will withhold from him the protection that it would otherwise extend" *(Ward v City Trust Co. of N. Y.,* 192 NY 61, 73-74).

The mere fact that Chemical took the instruments for value does not necessarily establish its "good faith". This must be determined from all the facts and circumstances surrounding

---

2. Subdivision (7) of section 3-304 of the Uniform Commercial Code provides: "In any event, to constitute notice of a claim or defense, the purchaser must have knowledge of the claim or defense or knowledge of such facts that his action in taking the instrument amounts to bad faith."

the transaction (see *City of New York v Nic Homes,* 44 Misc 2d 440, 442, and cases cited).

The trial court found that Chemical's failure to investigate the progress of the construction, or the financial position of Stanndco or Quigley, brought it "perilously close" to losing its holder in due course status. Although the court found that "a prudent lender" might well have pursued an investigation, it found that the proof failed "to indicate lack of good faith". It is apparent that the court did not consider other relevant facts and circumstances disclosed by the evidence. We find that Chemical did not take the instrument in good faith and without notice of a defense or claim to it. In brief, Chemical did not sustain its burden of establishing its holder in due course status (Uniform Commercial Code, § 3-307, subd [3]).[3]

Stanndco's letter of inquiry dated May 1, 1973 informed Chemical that Stanndco, not Quarry, was seeking a loan. It also informed the bank that the notes, which Stanndco sought to use as collateral for the loan, constituted the contribution of the limited partners to the partnership. The letter, printed on Stanndco stationery and signed by Quigley in his capacity as chairman of the board and chief executive officer for Stanndco, in no way indicates that the notes executed by the limited partners would be used for a partnership purpose. The clear import of the letter is that Stanndco was seeking a loan for its own corporate purposes. Yet in the face of these facts, Chemical neither investigated the limited partnership nor inquired as to the scope of Stanndco's authority to negotiate the notes.

The chain of indorsements printed on the back of each note also gave the bank notice that Stanndco was negotiating the notes for its own benefit. The notes of Sherwood and Giliotti were indorsed to Stanndco from Quarry by Stanndco as general partner. Stanndco then indorsed them to Chemical. The notes of Chayefsky and Haskell were also indorsed to Stanndco from Quarry by Stanndco, but here Stanndco did not sign in its representative capacity as general partner. These notes also were indorsed by Stanndco to Chemical.[4] The dis-

---

3. Subdivision (3) of section 3-307 provides: "After it is shown that a defense exists a person claiming the rights of a holder in due course has the burden of establishing that he or some person under whom he claims is in all respects a holder in due course."

4. See Appendix Nos. 1 and 2 for copies of the indorsements appearing on the back of the notes.

crepancy between Stanndco's indorsements on the various notes indicates at least some irregularity. Stanndco was negotiating Quarry's notes in different capacities—agent in one case, principal in the other.

Moreover, the Chayefsky and Haskell notes reflect a previous transaction between Quarry and the Central Trust Company ("Central Trust"). These notes were first negotiated by Stanndco as general partner of Quarry to Central Trust which later indorsed them back to Quarry with recourse.[5] Central Trust's previous indorsements of the notes to Quarry evidences a recognition that the notes belong to the partnership and not to Stanndco. Yet, apparently ignoring this signal, Chemical treated the transaction as a purchase of Stanndco's property. Its bank draft was made payable to Stanndco, not the partnership.

Furthermore, the notes were purchased at a substantial discount. Although the mere fact that a note is purchased for an amount less than its face value is not of itself sufficient to charge the purchaser with notice of existing equities, it is a factor to be considered along with other factors as evidence of bad faith (Chemical Bank of Rochester v Ashenburg, 94 Misc 2d 64, 66).

The circumstances here are more than just suspicious. They clearly demonstrate that Stanndco was using the partnership notes for its own corporate purposes in breach of its fiduciary duty to the limited partnership (Uniform Commercial Code, § 3-304, subd [2]).[6] The indorsements appearing on each note should have prompted Chemical, before consummating the sale, to make inquiries of Stanndco's authority. Any investigation would have disclosed that the general partner had not been authorized to exercise dominion over the partnership property or assign the rights of the limited partners in specific partnership property without their written consent or ratification.[7] Instead, Chemical blithely ignored clear warnings which

---

5. See Appendix No. 2.

6. Subdivision (2) of section 3-304 provides that "(t)he purchaser has notice of a claim against the instrument when he has knowledge that a fiduciary has negotiated the instrument in payment of or as security for his own debt or in any transaction for his own benefit or otherwise in breach of duty."

7. By appropriating the partnership property for its own corporate purpose, Stanndco effectively terminated the right of the limited partners to have their contribution returned. Each limited partner has a right to receive a share of the profits and to a return of his contribution after payment, among other things, of all liabilities of the partnership (Partnership Law, § 105).

signaled that the notes were being negotiated by Stanndco without proper authority and for its own use. It chose blindly to accept the notes, as several expert witnesses opined at trial, in clear violation of sound banking practices.

In view of all these facts and circumstances, we conclude that the bank did not act in good faith. It had actual knowledge or knowledge of facts sufficient to impute notice of infirmities, defects and defenses to the instrument (Uniform Commercial Code, § 3-304, subd [7]). It had notice that Stanndco was negotiating the partnership's notes for its own corporate purpose in breach of its fiduciary duty to the limited partners (Uniform Commercial Code, § 3-304, subd [2]). In short, the weight of the evidence supports a finding that the bank was not a holder in due course.

As a nonholder in due course, plaintiff takes subject to the defendants' claim that the notes were negotiated for the individual purpose of a general partner in breach of its fiduciary duty. Even though Quarry is not a named party in this action, the makers can assert this defense. They are not asserting *"jus tertii"*, but their own rights (Uniform Commercial Code, § 3-306, subd [d]; *Chemical Bank of Rochester v Ashenburg, supra,* p 67). As limited partners, these makers are directly offended and damaged by Stanndco's breach of duty. Subdivision (d) of section 3-306 of the Uniform Commercial Code was not intended by its drafters to bar this type of defense (see Official Comment No. 5, Uniform Commercial Code, § 3-306; *Chemical Bank of Rochester v Ashenburg, supra,* pp 67-68). The unauthorized signature of Quarry is "wholly inoperative" and Chemical, which should have known that Quarry's indorsement was made without the consent of the limited partners, cannot recover from the signers of the instrument (Uniform Commercial Code, § 3-404).

Chemical also took the instruments subject to the defense of Sherwood and Giliotti that payment was conditioned upon completion of certain percentages of construction (Uniform Commercial Code, § 3-306). For this and the above-stated reasons appellants are not liable on the notes to Chemical.

We find a total lack of proof to support appellants' request in the declaratory judgment actions for repayment of the

moneys paid on the first series of notes. They allege that they were "not aware of the facts and circumstances * * * set forth in [their] Complaint regarding the improper acts surrounding the original investment by [the limited partners] in QUARRY" at the time payment was made on the notes. They claim that they are entitled to a rescission of their obligation under the notes paid in 1973 and to a repayment of this money by Stanndco and the class B general partners "or by any party which has assumed the rights and obligations of these parties, namely, CHEMICAL BANK OF ROCHESTER." No finding of liability was attached to Chemical due to these alleged improper acts. The proof before the court concerned the legal status of Chemical as a holder of the notes, not the equitable remedy of rescission. The court will not "engage in speculation as to what might have happened in order to remedy a failure of proof" (Hartford Ins. Co. v County of Nassau, 46 NY2d 1028, 1030).

 Accordingly, it is held that Chemical is not a holder in due course of the notes at issue and it took possession of the notes subject to the defenses described above and the appellant makers are not liable on the notes to Chemical. Chemical's complaint against Haskell should be dismissed. Judgment should be granted to the plaintiffs in their declaratory judgment actions limited to a finding that they are not liable to Chemical on the notes at issue. The counterclaims of Chemical should be dismissed. Similarly, the award of attorneys' fees should be vacated.

DILLON, P. J., HANCOCK, JR., DOERR and MOULE, JJ., concur.

Appeal No. 1.—Judgment unanimously reversed, on the law and facts, with costs to defendant Haskell and complaint, and counterclaim, if any, dismissed.

Appeal No. 2.—Judgment unanimously reversed, on the law and facts, with costs to plaintiff, counterclaim dismissed, and judgment granted plaintiff declaring nonliability to defendant on the notes at issue.

Appeal No. 3.—Judgment unanimously reversed, on the law and facts, with costs to plaintiffs, counterclaim dismissed, and judgment granted plaintiffs declaring nonliability to defendant on the notes at issue.

APPENDIX NO. 1

Copy of indorsements appearing on the notes of Sherwood and Giolotti:

Pay to the order of Stanndco Developers, Inc., with recourse,

Quarry Square Associates.

Stanndco Developers, Inc., Gen'l Partner
By: D. J. Quigley, Chairman of the Board

Pay to the order of State Bank of Hilton, with recourse,

Stanndco Developers, Inc.

By: T. H. Traynor, Treas. //

APPENDIX NO. 2

Copy of indorsements appearing on the notes of Chayefsky and Haskell:

Pay to the Order of CENTRAL TRUST COMPANY ROCHESTER N.Y.

QUARRY SQUARE, ASSOCIATES

STANNDCO DEVELOPERS, GENERAL PARTNER

By
David Quigley

Pay to the order of QUARRY SQUARE, ASSOCIATES with recourse,

CENTRAL TRUST COMPANY ROCHESTER N.Y.

BY

Pay to the order of Stanndco Developers, Inc., with recourse,

Quarry Square Associates

Stanndco Developers, Inc.
By: D. J. Quigley, Chairman of the Board

Pay to the order of State Bank of Hilton, with recourse,

Stanndco Developers, Inc.

By: T. H. Traynor, Treas. //