DONALD L. PHILLIPS and NEIL O. WARNER, individually and as limited partners of KULA 200, a Hawaii limited partnership, on behalf of themselves and all other limited partners similarly situated and in the right and for the benefit of said limited partnership, Plaintiffs-Appellees, *v.* KULA 200, WICK REALTY, INC., a Hawaii corporation, WICK ASSOCIATES, a Hawaii partnership, and ERLING P. WICK, Defendants-Appellants

NO. 7152

JUNE 3, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY BURNS, J.

Defendants interlocutorily appeal the lower court's Order Denying Motion to Dismiss Derivative Action and for Summary Judgment.

The issue is whether the lower court correctly ruled that two limited partners may maintain a derivative action in favor of the limited partnership against the limited partnership, the two general partners, and one limited partner. We affirm.

Defendant-Appellant KULA 200 is a Hawaii limited partnership.[1] Defendant-Appellant Wick Realty, Inc., is a Hawaii corporation and it and Defendant-Appellant Erling P. Wick are the two general partners of KULA 200. Defendant-Appellant Wick Associates is a Hawaii partnership and one of the limited partners of KULA 200. Defendant-Appellant Erling P. Wick is one of four partners in Wick Associates, and he is president and owner of 25 percent of the stock of Wick Realty, Inc. Plaintiffs-Appellees Donald L. Phillip and Neil O. Warner are limited partners of KULA 200, and they together own a one thirty-sixth (1/36) or 2.78 percent limited partnership interest therein.

According to its Certificate of Limited Partnership (CLP), KULA 200 was "formed to purchase, hold, sell, lease, subdivide and/or improve those certain parcels of land" which it was acquiring from Wick Associates in return for an allocation of six limited partnership units and an assumption of a $228,750 mortgage.

On May 22, 1978, plaintiffs "individually and as limited partners of KULA 200, a Hawaii limited partnership, on behalf of themselves and all other limited partners similarly situated and in the right and for the benefit of said limited partnership,"[2] filed a verified com-

---

[1] See HRS § 425-21 et. seq.

plaint, alleging that Wick Realty and Erling Wick intentionally, wilfully, and fraudulently breached the fiduciary duties they owed to the limited partners, thus causing damage to the limited partners. Specifically, they alleged:

1. That to acquire the property from Wick Associates, the limited partnership not only gave six limited partnership interests and assumed the mortgage, but without authority it also paid $165,250 in cash; and

2. That without authority the limited partnership paid a $135,000 syndication commission to general partner Wick Realty, Inc.; and

3. That without authority the limited partnership paid a total of $269,369 in sales commissions to general partner Wick Realty, Inc.; and

4. That the acts of the defendants constitute unfair and deceptive trade practices in violation of Hawaii Revised Statutes (HRS) § 480-2 (1976).

Plaintiffs prayed, *inter alia:*

1. That KULA 200 be dissolved or that a receiver be appointed to run the limited partnership's affairs; and

2. That defendants or some of them be required to:

a) disgorge and repay to said limited partners, excluding "those defendants holding limited partnership interests either singularly, jointly or in trust," $165,250, $135,000, and $269,369, plus interest; and

b) pay $1,708,857 treble damages; and $1,000,000 punitive damages; and

3. That the general partners be required to provide a true and full accounting "of all things affecting the limited partnership"; and

4. For an award of costs and attorney's fees.

Prior to the filing of this action, but after plaintiffs had notified all parties concerned of their allegations and demands, the KULA

---

[2] The complaint suggests that plaintiffs have sued (1) individually, (2) as members and representatives of a class, and (3) derivatively. They have prayed for individual relief (relief for themselves as individuals), class relief (relief for themselves as members and representatives of the class), and derivative relief (relief for the limited partnership). Although we do not recommend such a combination, we have no basis for prohibiting it. However, it will take great care on the part of all concerned to avoid confusing the three causes.

200 general partners asked all the KULA 200 limited partners to approve the alleged wrongdoings. 75.69 percent of the limited partnership· interests responded favorably. Since the limited partnership certificate stated that it was amendable by the consent of not less than 75 percent of the issued limited partnership units and since 75.69 percent of the limited partnership units consented, the certificate was amended to approve and ratify the alleged wrongdoings.

In their Memorandum in Support of Motion to Dismiss Derivative Action and for Summary Judgment, defendants stated their argument as follows:

> The question in this case is whether, giving the rejection of the claims by the overwhelming majority of the Kula 200 limited partners, can the plaintiff limited partners nevertheless pursue a derivative action for these claims on behalf of the Limited Partnership and the limited partners? Can the plaintiff limited partners maintain this derivative action even though they do not fairly and adequately represent the interests of the overwhelming majority of the Kula 200 limited partners?***
>
> In this case the plaintiff limited partners do not fairly and adequately represent the interest of the overwhelming majority of the Kula 200 limited partners who have approved the Disputed Kula 200 General Partners Acts. The plaintiff limited partners cannot maintain this derivative action. The derivative action should be dismissed.

Although plaintiffs indicate that this case involves only the fair and adequate representation issue, our analysis reveals many more issues which we shall deal with in logical sequence.

According to Rule 23.1, HRCP (1972),[3] a derivative action is an action by a member to enforce a right of the association which the association failed to enforce.

Is a limited partnership an association referred to in Rule 23.1, HRCP (1972)? We answer yes.

---

[3] Rule 23.1. *DERIVATIVE ACTIONS BY SHAREHOLDERS.* In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership

Does a limited partnership have a right to claim damages for a breach by its general partners of the fiduciary duty which they owe it? We answer yes.

In such case, if the limited partnership refuses to bring an action for damages against its general partners, may a limited partner maintain a derivative action? We answer yes. *Riviera Congress Associates v. Yassky,* 18 N.Y.2d 540, 223 N.E.2d 876, 277 N.Y.S.2d 386 (1966); *Smith v. Bader,* 458 F.Supp. 1184 (SDNY 1978); *see* Comment, 65 COLUM. L. REV. 1463-1487 (1965); Note, 90 HARV. L. REV. 763-789 (1977).

In such case, does the fact that 75.69 percent of the limited partnership interests object to the derivative action bar the owners of 2.78 percent of the limited partnership interests from maintaining a derivative action? We answer no. As applied in this case, Rule 23.1's, HRCP (1972), "similarly situated" language refers to the minority limited partners who did not approve and ratify the alleged breach. 7A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil § 1833 at 394 (1972); 3B MOORE'S FEDERAL PRACTICE ¶23.1.16[3] (2d. ed. 1980).

Did the CLP as originally signed, acknowledged, and filed authorize the acts constituting the alleged breach? The answer is that the record does not provide us with the answer to this question; therefore, for purposes of this appeal, we must assume that it does not.

Can 75.69 percent of the limited partnership interests cause the limited partnership to ratify, forgive, or waive a claim for a breach of fiduciary duty owed it by one of its general partners? We answer that they cannot. Can 75.69 percent of the limited partnership interests prevent the limited partnership from pursuing a claim for a breach

---

thereafter devolved on him by operation of law. The complaint shall also allege with particularity the efforts made by the plaintiff to obtain the action he desires from the directors or comparable authority and from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs.

of fiduciary duty owed it by one of its general partners by amending the CLP to *ex post facto* authorized the acts constituting the alleged breach? We answer that they cannot. It is elementary partnership law that unless there is an express agreement among all the partners to the contrary, one partner may not make a profit for himself individually out of the partnership business. 60 AM. JUR. 2d *Partnership* § 126 (1972). Assuming no such express agreement exists in the CLP or elsewhere, then the acts constituting the alleged breach are unauthorized.

Further, the CLP is an agreement between the partners which is subject to the provisions of the Uniform Limited Partnership Act. HRS §§ 425-21 to 425-52 (1976), as amended). HRS §§ 425-29 (1976), as amended) provides in relevant part as follows:

§ 425-29 *Rights, powers, and liabilities of a general partner.* A general partner shall have all the rights and powers and be subject to all the restrictions and liabilities of a partner in a partnership without limited partners, except that without the written consent or ratification of the specific act by all the limited partners, a general partner or all of the general partners have no authority to:

(1) Do any act in contravention of the certificates;

\*    \*    \*

(4) Possess partnership property, or assign their rights in specific partnership property, for other than a partnership purpose;

\*    \*    \*

Clearly, elementary partnership law and HRS § 425-29 (1976, as amended) prohibit one partner from making a profit for himself individually out of the partnership business unless "written consent or ratification of the specific act by all the limited partners" is obtained.

On this appeal, the crucial fact is not that 75.69 percent of the limited partnership interests have expressly consented and ratified the alleged acts of unauthorized self-dealing. Rather, it is that 24.31 percent have not. Until 100 percent are accounted for, the limited partnership is entitled to directly or derivatively maintain an action for damages.

Affirmed and remanded for further proceedings consistent

herewith.

*William F. Crockett (Crockett & Nakamura)* for defendants-appellants.

*J. W. Ellsworth (Weight* and *Ellsworth)* for plaintiffs-appellees.