DONALD L. PHILLIPS, NEIL O. WARNER, LORNE M. PHILLIPS, CARL H. YEAGER, PEARL B. YEAGER, DR. M. J. McDONALD, Custodian for JOHN McDONALD, TODD McDONALD, PAUL McDONALD, JOEL McDONALD and SAM McDONALD, DONALD E. DIETRICH, MARY JOAN DIETRICH, GLENN L. FULTZ, ONA S. FULTZ, FLORA JANE MINCH, ELLIOT W. SEYMOUR and WILLIAM A. FLEMING as Co-Trustees of Guy Hughes Estate, CHARLES LEDWARD and DIANA LEDWARD, Plaintiffs-Appellants, *v.* KULA 200, WICK REALTY, INC., a Hawaii corporation, WICK ASSOCIATES, a Hawaii partnership, and ERLING P. WICK, Defendants-Appellees

NO. 8057

■

(CIVIL NO. 3897)

JULY 19, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

■

OPINION OF THE COURT BY BURNS, C.J.

Defendant Kula 200 is a Hawaii limited partnership. In *Phillips v. Kula 200,* 2 Haw. App. 206, 629 P.2d 119 (1981) (hereinafter referred to as "Kula 200 Derivative"), we permitted 2.78% of Kula 200's limited partners to derivatively assert a breach of fiduciary duty action for damages against Kula 200, its two general partners, and one of its limited partners. Kula 200 Derivative has not yet been tried. In this case (hereinafter referred to as "Kula 200 Individual"), 18.75% of Kula 200's limited partners[1] individually asserted against the same defendants the same breach of fiduciary duty action for actual, treble,[2] and punitive damages[3] and for an accounting. After a bench trial, the lower court entered judgment in favor of defendants, and plaintiffs now appeal. We affirm the judgment, but for a reason other than those cited by the trial court.

The dispositive issues on appeal and our answers are:

I. Did the lower court err in not ordering an accounting? No.

---

[1] Plaintiffs own 6.75 shares of Kula 200's 36 issued and outstanding shares as follows:

| | |
|---|---|
| Donald & Mary Joan Dietrich | .50 |
| Guy Hughes Estate | 1 |
| Charles & Diana Ledward | .25 |
| Michael McDonald, Custodian | 1 |
| Howard & Flora Minch | 1 |
| Lorne Phillips | 1 |
| Neil Warner | .50 |
| Donald Phillips | .50 |
| Carl & Pearl Yeager | .50 |
| Glenn Fultz | .50 |

Fultz, however, withdrew as a plaintiff. The Yeagers expressed a desire to withdraw as plaintiffs but did not do so.

[2] Hawaii Revised Statutes (HRS) § 480-13 (1976, as amended) creates a private cause of action for violations of the state's antitrust laws and provides for treble damages. Plaintiffs, however, do not challenge conclusion of law 10 which states as follows:

HAW. REV. STAT. Section 480-2 does not give a limited partner involved in an internal partnership dispute a private right of action based upon disputed payments made by a general partner of partnership funds.

[3] For a discussion of the "Fiduciary Relationship of a Partner," see 67 Women Lawyers Journal 11 (1981).

II. May the limited partner plaintiffs maintain individual actions for damages allegedly caused by a breach of the fiduciary duty owed by the general partners to the limited partnership? No. The only way they may pursue that claim is derivatively.[4]

The relevant facts are as follows: On September 17, 1968, defendant Erling P. Wick, Hiroshi Beppu, Herbert P. Brook, and A. J. Huddleston paid $4,000 to Virginia Phillips Coelho for an option to buy 119.02 acres of land for $268,750.

On June 1, 1969, Wick, Beppu, Brook, and Huddleston, as partners of defendant Wick Associates, purchased 120.177 acres of land from Frank Munoz and Donald H. Tokunaga by way of an agreement of sale. The purchase price of $360,000 was payable by way of $100,000 down and annual installments plus interest.

On September 4, 1969, Mrs. Coelho conveyed 119.448 acres of land to Wick as "Trustee for Wick Associates, a Hawaii partnership."

Commencing as early as May 29, 1969, various investors signed agreements and made deposits in escrow to "E. P. Wick & Co." to purchase undivided fractional shares in the two properties. The following plaintiffs signed as follows:

| Date | Seller | Deposits | Shares | Price |
|---|---|---|---|---|
| 08/30/69 | Carl & Pearl Yeager | $ 5,000 | 1/96 | $22,500 |
| 12/11/69 | Howard Minch | 10,000 | 1/48 | 45,000 |
| 04/25/70 | Dr. D. Dietrich | 5,000 | 1/72 | 22,500 |
| 08/11/70 | Charles Ledward | 2,500 | 1/144 | 11,250 |
| 10/13/70 | Neil Warner & Donald Philips | 10,000 | 1/36 | 45,000 |
| 11/16/70 | Lorne Phillips | 10,000 | 1/36 | 45,000 |

As the fractions indicate, sometime between December 11, 1969 and April 25, 1970 the contemplated total number of shares was reduced from 48 to 36 but the price per share remained the same.

---

[4] This opinion modifies our comment in footnote 2 of Kula 200 Derivative.

On March 9, 1971, Kula 200 was registered as a Hawaii limited partnership with 36 limited partnership units. Persons who signed subscription agreements became limited partners. Initially, its sole general partner was defendant Wick Realty, Inc., a corporation wholly owned by Mr. Wick. Mr. Wick became the second general partner on November 22, 1972.

Kula 200's Certificate of Limited Partnership (CLP) provides in relevant part:

### ARTICLE II.

The partnership has been formed to purchase, hold, sell, lease, subdivide and/or improve those certain parcels of land more particularly described on Exhibit A attached hereto and made a part hereof.

\* \* \* \* \*

### ARTICLE VI.

\* \* \* Wick Associates, a partnership organized under the laws of the State of Hawaii, has received six (6) fully paid limited partnership units, as a contribution of property to the limited partnership for such interest in the limited partnership, for its right, title and interest in and to . . . (a) that certain 120.177 acre parcel of land purchased by Wick Associates from Frank Munoz and Donald H. Tokunaga, under an Agreement of Sale, dated June 1, 1969, . . . and (b) that certain 119.448 acre parcel of land purchased by Wick Associates from Virginia Phillips Coelho, under a deed dated September 4, 1969, . . . subject to a purchase money mortgage, dated September 12, 1969, . . . held by the said Virginia Phillips Coelho to secure the payment of a note for the balance of purchase price in the amount of TWO HUNDRED TWENTY EIGHT THOUSAND SEVEN HUNDRED FIFTY and 00/100 DOLLARS ($228,750.00). The limited partnership shall assume and be liable for the payment of the balance of purchase price due under the said Agreement of Sale held by the said Frank Munoz and Donald H. Tokunaga, and for the balance of purchase price due under the said note and mortgage held by the said Virginia Phillips Coelho.

It is agreed that the value of the said property acquired

from the said Frank Munoz and Donald H. Tokunaga, and contributed by Wick Associates to the limited partnership in exchange for such interest in the limited partnership, is in the amount of ONE HUNDRED THIRTY FIVE THOUSAND and 00/100 DOLLARS -------($135,000.00), and that the value of the said property acquired from the said Virginia Phillips Coelho, and contributed by Wick Associates to the limited partnership in exchange for such interest in the limited partnership is in the amount of ONE HUNDRED THIRTY FIVE THOUSAND and 00/100 DOLLARS ------- $135,000.00). * * *

### ARTICLE VII.

* * * B. Wick Associates is not obliged to make any additional contribution of capital in respect of the six (6) limited partnership units it holds. * * *

### ARTICLE IX.

* * * The general partner shall not, in its capacity as a general partner, be entitled to share in the profits of the limited partnership, nor shall it be entitled to any salary for any services furnished by it to the limited partnership. * * *

### ARTICLE XVI.

* * * The general partner shall not, in the course of the business of the limited partnership, . . . purchase, or contract to purchase, or sell or contract to sell any property for or of the limited partnership; execute any contract for the development of any property of the limited partnership[.][5] [Footnote added.]

### ARTICLE XVII.

A contract between the limited partnership and another partnership, joint venture, trust, corporation, or other business association shall not be void or voidable because at the time such contract was entered upon a general or limited partner was also a member, beneficiary, trustee, partner, director, officer or stockholder in such other partnership, joint venture, trust, corporation, or other business

---

[5] Obviously there is a conflict between Articles II and XVI of the CLP.

association, nor shall any contract between the limited partnership and a general or limited partner be void or voidable; provided, that, in either such event, and before the limited partnership enters upon such a contract, the general or limited partners with such an interest shall in good faith fully reveal to the other general and limited partners, the extent of such interest. * * *

Each of the 30 non-Wick Associates' partnership units paid in $10,000 and was obligated to pay in an additional $35,000 if necessary.

On October 28, 1971, Wick, as "Trustee for Wick Associates," conveyed the 119.448-acre parcel to Kula 200.

On November 18, 1971, Wick Associates assigned its interest in the Munoz/Tokunaga agreement of sale to Kula 200.

Thereafter, Kula 200 subdivided, developed, and sold the land in two phases. Phase one, consisting of 55 lots, sold out on February 8, 1973. Phase two, consisting of 54 lots, sold out on August 4, 1977. Each of the 30 limited partnership units (other than Wick Associates' units) actually paid in $20,021 per share. Each has received $90,719 in return.

The three categories of transactions about which plaintiffs complain are as follows:

*Category One:* The CLP states that Wick Associates conveyed the two parcels of land to Kula 200 in return for six fully paid limited partnership units and Kula 200's assumption of the balances due. However, Kula 200 also was charged with $168,000[6] that had been paid to Coelho and Munoz/Tokunaga prior to Kula 200's acquisition of the parcels and which was not a part of the debt balances assumed by Kula 200 under article VI of the CLP.

The evidence showed that in 1968 when Mr. Wick and his partners in Wick Associates became aware of the availability and potentiality of the two parcels of land, they began soliciting commitments and deposits from investors. The funds received from these initial investors were used to pay the amounts due in the acquisition of the parcels even though Kula

---

[6] In Kula 200 Derivative, this amount was said to be $165,250.

200 had not been formed. Later, when the principals finally decided that they would proceed on the basis of a 36-unit limited partnership, they did not state in the CLP or in any other relevant documents that limited partnership funds had been used to make all the payments previously made in the acquisition of the parcels and that such use of partnership funds was authorized by all concerned.

*Category Two:* Wick Realty, Inc., and Wick Associates and their sales agents sold 30 limited partnership units at the $45,000 subscription price and paid themselves a 10% sales (syndication) fee totalling $135,000. In those instances where the sale was made by a sales agent, they allocated 55% of this fee to themselves and 45% to the sales agent.

*Category Three:* Wick Realty, Inc., sold all the lots in the two subdivisions and charged a 6% broker's fee on each sale. It split some of the fees with other brokers. The net amount received by Wick Realty, Inc., was $265,766.50[7] which it allocated between itself and its sales agents[8] by application of the 55%-45% formula.

I.

The first issue on appeal is whether the lower court erred in not ordering an accounting. Since this is a matter addressed to the trial court's discretion, 1 Am. Jur. 2d *Accounts and Accounting* § 50 (1962), which in this case has not been abused, our answer is no.

II.

The second issue, which we raise *sua sponte,* is whether plaintiffs may each maintain an individual action for damages caused by the alleged breach of the fiduciary duty owed by the general partner. This question is discussed in 33 Vanderbilt L.

---

[7] In Kula 200 Derivative, this amount was said to be $169,369.

[8] *See* HRS §§ 467-1(3), 1.5.

Rev. 343, 355 (1980), and in 90 Harvard L. Rev. 763, 770 (1976). Our answer is no.

In our view, the dispositive question is whether the fiduciary duty owed by the general partner is owed to each limited partner or to the limited partnership or both. The answer to that question is contained in the applicable statutes.

Under Hawaii's Uniform Limited Partnership Act (HULPA), HRS § 425-29, "[a] general partner shall have all the rights and powers and be subject to all the restrictions and liabilities of a partner in a partnership without limited partners[.]"

Under Hawaii's Uniform Partnership Act, HRS § 425-121(1), "[e]very partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transactions connected with the . . . conduct . . . of the partnership[.]"

Based on the above statutes, we conclude that the general partner's fiduciary duty is owed to the limited partnership, not the limited partners.

The resulting question is whether a limited partner can maintain an individual action against the general partner for breach of the fiduciary duty owed by the general partner to the limited partnership. As did Judge Friendly in *Klebanow v. New York Produce Exchange,* 344 F.2d 294 (2d Cir. 1965), we find corporate law to be analogous. Under corporate law, "in no case can the stockholder bring suit for himself and in his own right on a cause of action belonging to the corporation." 19 Am. Jur. 2d *Corporations* § 526 (1965) (footnotes omitted). We think the same rule should be applied with respect to limited partnerships. Consequently, we hold that a limited partner may not bring a suit for himself and in his own right on a cause of action belonging to the limited partnership.

We recognize the problems created by requiring plaintiffs to proceed derivatively. For example, in February 1977, Wick Realty, Inc., asked the limited partners to ratify each of the three questioned categories of transactions. Such ratification is authorized by HULPA, HRS § 425-29 (1976, as amended). Of the 36 shares, 27.25 ratified all three transactions. Four of the remaining 8.75 shares (McDonald, Minch, Takitani, Uchimura) ratified all of the category one transactions and three

(Minch, Takitani, Uchimura) ratified all of the category two transactions. Therefore, unless adjustments are made, any recovery in Kula 200 Derivative will benefit Kula 200 and through it, all its limited partners, including those who are not entitled to the award of any damages because of ratification or otherwise.

Here again, the analogous corporate law governing derivative actions suggests a solution. In corporate derivative suits, "the decree is usually framed so that those estopped will share as little as possible in the award," Annot., 16 A.L.R.2d 467, 494 (1951), and "occasionally where the stockowners are few in number and are before the court, what amounts to a preferential dividend is decreed, participation in which is restricted to the innocent." *Id.* at 470. If necessary, we see no reason why such a practice could and should not be implemented in Kula 200 Derivative to distinguish between the limited partners who are entitled to damages, if any, and the limited partners who are not entitled.

Affirmed.

*J. W. Ellsworth* (*William W. Saunders* with him on the brief) for appellants.

*William F. Crockett* (*Crockett and Nakamura* of counsel) for appellees.