ALASKA CONTINENTAL
BANK, Appellant,

v.

ANCHORAGE COMMERCIAL LAND
ASSOCIATES, Appellee.

No. S–2644.

Supreme Court of Alaska.

Oct. 20, 1989.

Michael Zahare, Bradbury, Bliss & Riordan, Anchorage, for appellant.

Timothy R. Byrnes, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

RABINOWITZ, Justice.

This appeal is governed by the law of Hawaii.[1] The main dispute concerns the liability of a limited partnership for a loan negotiated by its former general partner and Alaska Continental Bank. The issues presented are whether the limited partners ratified the bank loan, and whether the partnership is estopped to deny the validity of the loan. The counterclaim raises the question whether the limited partnership should have paid the bank pursuant to an assignment executed by a limited partner in an unrelated transaction. The superior court entered judgment for the partnership, ordering that the partnership could not be held liable for the bank loan. The court also entered judgment in favor of the partnership on the bank's counterclaim. We reverse and remand.

1. The limited partnership agreement states that "the application or interpretation [of the agreement] shall be governed exclusively by its terms and by the laws of the State of Hawaii."

## I. FACTUAL AND PROCEDURAL BACKGROUND.

Appellee Alaska Commercial Land Associates is a limited partnership which at the time of the transaction in question owned two adjoining tracts of land in Anchorage known as the Costco property and tract A1A.[2] The general partner was The Clients Development Corporation (TCDC), whose president was Van Carrigan.

Carrigan was a board member of appellant Alaska Continental Bank until March 1985, at which time he became a member of the bank's holding company, which owns 100 percent of the bank's stock. In July 1985 Carrigan applied for a $200,000 loan on behalf of TCDC for "working capital," secured by TCDC's interest in the limited partnership. After the bank's counsel reviewed the limited partnership agreement, the bank turned down the loan. The bank's decision was premised on its understanding that TCDC's interest in the partnership could not be pledged without the consent of the limited partners, which had not been obtained.

Within two weeks of being informed that his loan application had been denied, Carrigan applied for another loan. This time Carrigan proposed that the partnership borrow the money, secured by a deed of trust on tract A1A. The bank approved a loan of $400,000. This loan was made based on Carrigan's agreement that $167,000 would be used to pay off existing liabilities on a second deed of trust on tract A1A. The superior court found that Carrigan's use of the proceeds violated the partnership agreement.

Within three months after the loan was approved, the limited partners became convinced that TCDC, through Carrigan, was acting improperly as their general partner. In November of 1985 the limited partners voted to oust TCDC as general partner. Mitch Pike, a real estate agent, was installed as interim general partner. The partnership subsequently sued TCDC, Carrigan and others, disputing the validity of the $400,000 loan and other transactions.

The partnership made interest payments on the loan in January, February, March, and April of 1986. The superior court found that Pike made all of these payments. However, the partnership contended in a motion for reconsideration that Pike made only the March and April payments, and that the bank took the January and February payments directly out of the partnership's bank account. The superior court found it unnecessary to address this claim of error on reconsideration, and the evidence on this issue is inconclusive.

Also in March, Pike approached the bank proposing to increase the existing loan to $600,000, thereby paying off the $400,000 debt and giving the partnership net proceeds of ·$200,000. The bank rejected Pike's proposal. Thereafter, the partnership defaulted on the note. The bank then began to collect rent money directly from Costco, the partnership's tenant. In August 1986 Pike paid the bank a $2,000 "fee" so the bank would refrain from collecting Costco's rents. In October 1986 William Swayne was appointed general partner of the partnership. Within days of his appointment, Swayne apprised the bank that the partnership might challenge the validity of the $400,000 loan. The partnership then sued the bank to obtain a declaration that it was not obligated to repay the loan. Additionally, the partnership sought to enjoin foreclosure proceedings which the bank had commenced in relation to tract A1A.

Following trial, the superior court ruled that the partnership had ratified the loan, and thus had a duty to repay it in full. The partnership then moved for reconsideration on the ground that the bank failed to present evidence that all the limited partners had ratified the loan as required by Hawaii law. The superior court granted the motion for reconsideration, and held

---

**2.** The superior court entered detailed factual findings which are not challenged on appeal. Our summary of the facts relies on the superior court's findings.

Although Alaska Continental Bank challenged some of the findings in the points on appeal, its subsequent failure to brief these issues waives the challenge. *Wetzler v. Wetzler,* 570 P.2d 741, 742 n. 2 (Alaska 1977).

that the partnership had not ratified the loan. The superior court denied the bank's subsequent request to present additional evidence on the ratification issue, and entered judgment for the partnership.

This appeal followed.

## II. RATIFICATION.

The bank contends that the superior court erred in concluding that the unauthorized act of a general partner may be ratified only if each limited partner has had a formal opportunity to object to the ratification. The partnership contends that the superior court correctly resolved the legal issues.

Ratification is an affirmative defense. *See Morrow v. New Moon Homes, Inc.*, 548 P.2d 279, 294 (Alaska 1976) ("An affirmative defense is a new matter not set forth in the complaint which serves as a complete defense to it.") The burden of proving an affirmative defense is on the party asserting it. *Id.* Therefore, the bank had the burden of proving that the limited partners ratified the $400,000 loan.

In reviewing questions of law we apply our independent judgment and "adopt the rule of law that is most persuasive in light of precedent, reason, and policy." *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

### A. *Express Ratification.*

Hawaii has enacted the Uniform Limited Partnership Act ("ULPA"), Haw.Rev.Stat. ("HRS") §§ 425–21 to 425–52. The provisions of the Uniform Partnership Act ("UPA"), HRS §§ 425–101 to 425–143, also apply to limited partnerships to the extent they do not conflict with the ULPA. *Id.* § 425–106(2).

A general partner is an agent of the limited partnership for the purpose of con-

ducting partnership business; therefore, acts of the general partner within his actual or apparent authority bind the partnership. *Id.* § 425–109. In the instant case the superior court found that Carrigan had neither actual nor apparent authority to obligate the partnership on the $400,000 loan.

Even if a general partner lacks authority to enter a particular transaction, the partnership is bound by the general partner's action upon "written consent or ratification of the specific act by all the limited partners." HRS § 425–29.[3] In *Phillips v. KULA 200, Wick Realty, Inc.*, 2 Haw.App. 206, 629 P.2d 119, 122–23 (1981), the Hawaii Intermediate Court of Appeals examined HRS § 425–29 and concluded that a purported ratification by fewer than all the limited partners did not preclude suit by the partnership against a general partner that had breached its duty to the partnership:

> Can 75.69 percent of the limited partnership interests cause the limited partnership to ratify, forgive, or waive a claim for a breach of fiduciary duty owed it by one of its general partners? We answer that they cannot.
>
> . . . .
>
> On this appeal, the crucial fact is not that 75.69 percent of the limited partnership interests have expressly consented and ratified the alleged acts of unauthorized self-dealing. Rather, it is that 24.-31 percent have not. Until 100 percent are accounted for, the limited partnership is entitled to directly or derivatively maintain an action for damages.

In the case at bar the bank failed to present evidence from which the superior court could have concluded that every[4] lim-

---

**3.** HRS § 425–29 is identical to AS 32.10.080. The Hawaii statute provides in part:

A general partner shall have all the rights and powers and be subject to all the restrictions and liabilities of a partner in a partnership without limited partners, except that without the written consent or ratification of the specific act by all the limited partners, a general partner or all of the general partners have no authority to:

. . . .

(4) Possess partnership property, or assign their rights in specific partnership property for other than a partnership purpose. . . .

**4.** We do note that the requirement of ratification by *each* limited partner may in certain cases result in an unwarranted shield of liability for limited partners. In this respect it should be pointed out that this unique aspect of limited partnership law has apparently been abrogated in the most recent version of the Uniform Limit-

ited partner agreed in writing to be bound by Carrigan's unauthorized act. Therefore, the superior court correctly held that the limited partners had not expressly ratified the loan in question.

## B. *Ratification by Implication.*

The bank argues that the superior court erred in concluding that the partnership is not bound under the doctrine of ratification by implication. The partnership contends that the statutory requirement of express ratification eliminates the possibility of implied ratification.

■ Ratification is a common law doctrine by which a principal may affirm an act purportedly done on his or her behalf by an agent. *Bruton v. Automatic Welding & Supply Corp.*, 513 P.2d 1122, 1126–27 (Alaska 1973). Under Hawaii common law, "[w]here the partnership accepts the benefits of the unauthorized acts of its partner, with actual or constructive knowledge of all the material facts, it is deemed to have ratified the act." *In re WPMK Corp.*, 59 B.R. 991, 997 (D.Hawaii 1986) (citation omitted.) Consistent with Hawaii law is the related principle, recognized by this court in *Bruton,* that where a principal learns of the transaction but remains silent in circumstances where the principal would normally be expected to repudiate or disaffirm, the principal may be bound by the doctrine of ratification by implication. *Bruton,* 513 P.2d at 1127–28. Under Hawaii law a general partnership may ratify an unauthorized transaction by implication.

*In re WPMK Corp.,* 59 B.R. at 997. On the other hand we are aware of no decision by the courts of Hawaii in which the doctrine of implied ratification has been applied to a limited partnership.

■ Our research has led us to the conclusion that a limited partnership may impliedly ratify an unauthorized transaction of a general partner under HRS § 425–29. Although the Hawaii statute requires written consent, we conclude that it does not call for written ratification as well.[5] Otherwise, limited partners would be allowed to reap the benefits of tacitly agreed upon "unauthorized" transactions without being bound in the event a particular transaction turned sour.

Thus, it must be determined whether the bank's loan was impliedly ratified "by all the limited partners." HRS § 425–29. In the instant case, the bank argues that each limited partner impliedly ratified the TCDC loan by not repudiating it upon being made aware of its existence.

Our study of the record persuades us that this remaining issue should be remanded for resolution. We note that in its findings of fact the superior court did not address the question whether or not each limited partner impliedly ratified the transaction. Furthermore, when the bank requested the opportunity to present additional evidence on the issue, the superior court denied the motion because it believed that, as a matter of law, the limited partners could not impliedly ratify the loan.[6]

ed Partnership Act. *Compare* ULPA § 403 (1976, rev.1985), 6 U.L.A. 321 (1989 Supp.) *with* ULPA § 9(1) (1916), 6 U.L.A. 586 (1969).

5. *See Shindler v. Marr & Associates,* 695 S.W.2d 699, 705 (Tex.App.1985) (limited partnership, governed by ULPA, bound by unauthorized transaction of general partner if limited partners impliedly ratify the transaction); *Chelsea Nat'l Bank v. Lincoln Towers Associates,* 61 N.Y.2d 817, 473 N.Y.S.2d 953, 954, 462 N.E.2d 130, 131 (1984) (evidence of implied ratification by limited partnership too equivocal to be submitted to jury); *Chemical Bank of Rochester v. Haskell,* 68 A.D.2d 347, 417 N.Y.S.2d 541, 545 (1979), *rev'd on other grounds,* 51 N.Y.2d 85, 432 N.Y.S.2d 478, 411 N.E.2d 1339 (1980) (New York limited partnerships governed by ULPA).

6. The bank also argues that the superior court erred in failing to rule that the doctrine of equitable estoppel precludes the partnership from contesting its liabilities on the loan. We believe that the bank is not entitled to assert this theory.

A party seeking to invoke equitable principles must come before the court with clean hands. *In re Project 5 Drilling Program—1980,* 30 B.R. 670, 674 (Bankr.W.D.Ok.1983). In the case at bar we conclude that the bank cannot invoke equitable estoppel since it has unclean hands.

The superior court found in concluding that Carrigan did not have apparent authority to bind the partnership on this loan that:

At worst, [the bank] knowingly chose to overlook the irregularities in this case or to decline to investigate further. At best, [the

■ We therefore reverse the superior court's holding that the limited partnership may not be bound by the doctrine of implied ratification. Further we note our disagreement with the superior court's statement that, if implied ratification were permitted under Hawaii law, the bank would have to prove that the limited partners were given a "formal" opportunity to repudiate the transaction. On the contrary, implied ratification by the limited partners may be demonstrated by less formal evidence in accordance with the common law principles set forth above.

## III. COUNTERCLAIM: THE PISTER ASSIGNMENT.

### 1. *Facts.*

■ In an unrelated transaction, limited partners James Pister and Virginia Pister borrowed $338,000 from Alaska Continental Bank. The partnership consented to assignment to the bank of the Pisters' limited partnership interest as collateral. There is testimony on behalf of the bank that, both before and at the time of the loan closing, Pike agreed that the bank would be included as a payee on any checks issued by the partnership as distributions for the Pister partnership interest. Notwithstanding this alleged oral agreement between the bank and the Pisters, and the assignment, the partnership distributed $39,571 to the Pisters solely.[7]

In the superior court the bank counterclaimed against the partnership seeking to recover the $39,571 distributed to the Pisters. The court initially entered judgment for the bank, then reconsidered and concluded that the partnership was not bound by the assignment.

### 2. *Analysis.*

Article 11 of the limited partnership agreement severely circumscribes the alienability of partnership interests. Section 11.2(b) prohibits a limited partner from transferring his interest absent consent by the general partner. Additionally, in section 11.1(b) each limited partner agreed that he would not transfer any part of his interest to any person who does not "warrant" and agree not to transfer the interest. Here the security agreement executed by the Pisters granted the bank complete "discretion[ ] to transfer ... any or all of the Collateral," in violation of section 11.1(b). Additionally, the security agreement required the partnership to pay the bank only upon default or demand by the bank.

Our study of the record persuades us that this issue also must be remanded to the superior court for resolution. More specifically, on remand the superior court should make explicit findings of fact as to whether the partnership orally agreed that the bank would be included as a payee on any disbursement to the Pisters. In the event that the superior court enters such a finding, and further finds that the partnership breached the oral agreement, then the superior court should enter judgment in favor of the bank on its counterclaim.[8]

The judgment of the superior court is REVERSED and the matter REMANDED to the superior court for further proceedings not inconsistent with this opinion.

MATTHEWS, C.J., dissents.

MATTHEWS, Chief Justice, dissenting in part.

The court below initially found as a fact that the interim general partner, Pike, rati-

---

bank] was negligent in failing to seek information in the form of legal opinions and/or consultations with limited partners. [The bank's] inadequate loan review is particularly egregious in this case, because it was dealing with an "insider," Mr. Carrigan, [who was on the bank's holding company board.]
(Footnote omitted.)

There is substantial support for this finding in the record. In relevant part, there is testimony that the bank approved Carrigan's second loan application with almost no investigation into whether the loan, and its intended use, were in violation of the partnership agreement. The

bank's failure to inquire into the purposes of a loan which obligated a partnership, and which was used to benefit entities in which the borrowing agent had a substantial interest, precludes the bank from asserting a theory of equitable estoppel.

7. At the time this distribution was made the $338,000 loan was not in default.

8. We have considered the partnership's other arguments in connection with this counterclaim issue and have concluded that they are lacking in merit.

fied his predecessor's (Carrigan's) unauthorized assignment of partnership property by making loan payments and seeking to renegotiate the loan to pay off the entire balance. Upon reconsideration, this factual finding remained unchanged. Instead, the court decided that liability of the partnership required ratification by all limited partners, thus impliedly rejecting the idea that the new general partner alone could ratify the transaction on behalf of the partnership. I think this conclusion was an error of law.

Under the applicable statute [1] a general partner of a limited partnership has plenary power to act for the partnership except in limited circumstances. The only exception applicable here is subsection (4) which requires unanimous limited-partner approval when the general partner assigns partnership property "for *other than* a partnership purpose." HRS § 425–29 (emphasis added). This exception applies to Carrigan, but not to Pike. While Carrigan granted the deed of trust to the bank for "other than" a partnership purpose, Pike ratified the transaction for a partnership purpose— to avoid foreclosure of the deed of trust. Pike thus acted within his general sphere of plenary power, and his ratification of the loan transaction bound the partnership.

The statute does not imply that a successor general partner lacks authority to ratify an unauthorized act of a prior general partner. Since limited partnerships can have hundreds of limited partners, to so construe the statute would effectively stalemate a large limited partnership in circumstances where ratification by a successor general partner would be in the best interest of the partnership. There is no reason to suppose that the Hawaii Legislature or the authors of the Uniform Limited Partnership Act intended such an unwieldly result.[2]

For these reasons I would reverse the judgment of the superior court and remand with directions to enter judgment in favor of the bank on the claim of the partnership based on the trial court's factual finding of ratification by Pike. With respect to the bank's counterclaim, I agree with the majority opinion.

1. HRS § 425–29. The relevant text is set forth in note 3 of the majority opinion.

2. The Uniform Limited Partnership Act defines a limited partnership as "a partnership formed by two or more persons under the provisions of Section 2, having as members one or more general partners and one or more limited partners." Thus, there is no statutory limit to the number of limited partners able to participate in a limited partnership, and some very large groups have been assembled. *See, e.g., Sec. and Exch. Comm'n v. Murphy,* 626 F.2d 633, 646 (9th Cir.1980) (Investments in a limited partnership by 400 persons "clearly suggest[ed] a public offering rather than a private placement" for federal securities regulation purposes); *Lichtyger v. Franchard Corp.,* 18 N.Y.2d 528, 277 N.Y. S.2d 377, 223 N.E.2d 869 (1966) (class action permitted by limited partners of real estate syndicate with several hundred members).

To accommodate this increased participation of typically passive investors, the limited partnership form of business centralizes management in the general partner(s), providing limited partners with a role similar to that of corporate shareholders. *See Ruzicka v. Rager,* 305 N.Y. 191, 111 N.E.2d 878, 881 (1953) ("statutes permitting limited partnerships were intended to encourage investment in business enterprise by affording to a limited partner a position analogous to that of a corporate shareholder"). The efficiency achieved by this management structure is unnecessarily disrupted when a general partner cannot, without unanimous limited partner approval, act in the interest of the partnership.